1  DARIN W. SNYDER (S.B. #136003)
   dsnyder@omm.com
2  ALEXANDER B. PARKER (S.B. #264705)
   aparker@omm.com
3  BILL TRAC (S.B. #281437)
   btrac@omm.com
4  ASHISH SUDHAKARAN (S.B. # 312941)
   asudhakaran@omm.com
5  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
6  San Francisco, California  94111-3823
   Telephone:   (415) 984-8700
7  Facsimile:   (415) 984-8701

8  Attorneys for Defendant
   JADOOTV, INC., SAJID SOHAIL,
9  and HASEEB SHAH

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                    **WESTERN DIVISION**

13

14
   DISH NETWORK L.L.C.,                 Case No. 2:18-cv-09768-FMO-KS
15
                     Plaintiff,         **HASEEB SHAH'S NOTICE OF**
16                                       **MOTION AND MOTION TO**
                                         **DISMISS PURSUANT TO**
17       v.                              **FEDERAL RULE OF CIVIL**
                                         **PROCEDURE 12(b)(2) and**
18  JADOOTV, INC., SAJID SOHAIL,         **12(b)(5); MEMORANDUM IN**
   HASEEB SHAH, EAST WEST               **SUPPORT THEREOF**
19  AUDIO VIDEO, INC., and PUNIT
   BHATT,                               Date:      July 11, 2019
20                                       Time:      10:00 a.m.
                     Defendants.        Ctrm:      6D
21                                       Judge:     Hon. Fernando M. Olguin

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on July 11, 2019, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Fernando M. Olguin, District Judge of the United States District Court for the Central District of California, Defendant Haseeb Shah ("Shah") will, and hereby does, move this Court, pursuant to Rule 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure, to dismiss the Complaint (the "Complaint") filed by Plaintiff DISH Network L.L.C. ("DISH") in its entirety for lack of personal jurisdiction over Mr. Shah and for insufficient service of process.

This motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities; the Declaration of Haseeb Shah filed herewith; other pleadings, papers and record on file herein; and such oral argument as the Court may permit at the hearing on this Motion.

As set forth in the accompanying [Proposed] Order Granting Defendant Haseeb Shah's Motion to Dismiss Plaintiff DISH Network L.L.C.'s Complaint, Shah specifically asks this Court to dismiss Plaintiff's Complaint in its entirety for lack of personal jurisdiction as to Shah and for insufficient service of process. This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 16, 2019.

Dated: May 24, 2019

DARIN W. SNYDER
ALEXANDER B. PARKER
BILL TRAC
ASHISH SUDHAKARAN
O'MELVENY & MYERS LLP

By:   */s/ Darin W. Snyder*
          Darin W. Snyder
Attorneys for Defendant
HASEEB SHAH

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION..........................................................................0

MEMORANDUM OF POINTS AND AUTHORITIES...........................1

I.   INTRODUCTION .......................................................................1

II.  STATEMENT OF FACTS...........................................................2

    A.   Defendant Haseeb Shah ....................................................2

    B.   Plaintiff DISH ..................................................................2

    C.   DISH's Claims Against Mr. Shah......................................2

    D.   DISH's Claims Regarding Service ....................................2

        1.   ALLEGED FEBRUARY 12, 2019 SERVICE..........................3

        2.   ALLEGED MARCH 23, 2019 SERVICE .................................4

        3.   ALLEGED APRIL 19, 2019 SERVICE ....................................4

        4.   FALSE PRETENSES ................................................................5

    E.   Mr. Shah's Work for IDC Resources in Pakistan...............5

III. ARGUMENT ...............................................................................6

    A.   The Complaint Against Mr. Shah Should Be Dismissed For Insufficient Service of Process.........................................6

        1.   LEGAL STANDARD ...............................................................6

        2.   MR. SHAH HAS NOT BEEN SERVED..................................7

        3.   EVEN IF MR. SHAH HAD BEEN SERVED, SUCH SERVICE WOULD BE INEFFECTIVE BECAUSE IT DID NOT FOLLOW THE REQUIREMENTS OF THE HAGUE CONVENTION ................................................7

    B.   The Complaint Against Mr. Shah Should Be Dismissed For Lack Of Personal Jurisdiction...................................8

1.   LEGAL STANDARD ...................................................................... 8

2.   DISH DOES NOT CONTEND GENERAL
     JURISDICTION APPLIES, AND IT DOES NOT ..................... 9

3.   SHAH IS NOT SUBJECT TO SPECIFIC
     JURISDICTION ........................................................................... 9

4.   DISH'S COMPLAINT SHOULD BE DISMISSED
     WITH PREJUDICE ..................................................................... 18

IV.   CONCLUSION ........................................................................................ 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
   551 F.2d 784 (9th Cir. 1977) ................................................................... 9

*Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*,
   1 F.3d 848 (9th Cir. 1993) ...................................................... 16, 17, 18

*Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano County*,
   480 U.S. 102 (1982) ............................................................................. 15

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
   874 F.3d 1064 (9th Cir. 2017) .......................................................... 9, 10

*BWP Media USA Inc. v. Kemp Commc'ns, Inc.*,
   2016 WL 6917278 (C.D. Cal. Feb. 12, 2016) ..................................... 12

*Caruth v. Int'l Psychoanalytical Ass'n*,
   59 F.3d 126 (9th Cir. 1995) ................................................................ 18

*Core-Vent Corp. v. Nobel Indus. AB*,
   11 F.3d 1482 (9th Cir. 1993) ........................................................ 17, 18

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ............................................................................. 9

*Davis v. Metro Prod., Inc.*,
   885 F.2d 515 (9th Cir. 1989) .............................................................. 11

*Dole Food Co., Inc. v. Watts*,
   303 F.3d 1104 (9th Cir. 2002) ............................................................ 15

*FameFlynet v. KASW*,
   2015 WL 12819133 (C.D. Cal. Dec. 7, 2015) .................................... 14

*Fumoto Giken Co. Ltd. v. Mistuoka*,
   2015 WL 12766167 (C.D. Cal. Apr. 16, 2015).................................... 10

*Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*,
   2006 WL 2015188, at *3 (S.D.N.Y. July 13, 2006)............................. 8

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) ........................................................10, 14, 15, 16

*Indie Source, Inc. v. Where I'm From Apparel, LLC*,
    2015 WL 13357675 (C.D. Cal. Aug. 17, 2015) .................................................... 7

*Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.*,
    2008 WL 5412431 (C.D. Cal. Dec. 29, 2008) .................................................... 14

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006) ........................................................................... 10

*Rio Props, Inc. v. Rio Intern. Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ........................................................................... 14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................... 9, 10, 12

*State Narrow Fabrics, Inc. v. Fisher*,
    2016 WL 11002147 (C.D. Cal. Nov. 16, 2016) .................................................. 11

*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................... 12

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) ............................................................................................ 10

Fed. R. Civ. P. 12(b)(2) ............................................................................................ 9

Fed. R. Civ. P. 12(b)(5) ............................................................................................ 6

- iv -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      DISH, a major U.S. television provider with approximately 16,000

4  employees, seeks to sue Haseeb Shah, a Pakistani network administrator who has

5  never visited the United States.  As part of his employment with a Pakistani

6  company called IDC Resources, Mr. Shah provides network management services

7  to co-defendant Jadoo TV.  Mr. Shah has no connection with the United States

8  other than his work for Jadoo TV through his employment with IDC Resources.

9      DISH's complaint against Mr. Shah should be dismissed for two reasons.

10  First, DISH has failed to serve Mr. Shah with the summons and complaint.  DISH

11  claims that Mr. Shah was served on three separate occasions.  This is untrue.  Mr.

12  Shah has never been served.  And even if DISH had personally delivered the

13  summons and complaint to Mr. Shah—which it has not—that would still not count

14  as service, because DISH has not followed the requirements of the Hague Service

15  Convention, which governs international service of legal documents within

16  signatory countries including Pakistan.

17      Second, the Complaint should also be dismissed because this Court lacks

18  personal jurisdiction over Mr. Shah.  DISH does not allege general personal

19  jurisdiction, and it could not exist given that Mr. Shah has never visited the United

20  States.  Specific personal jurisdiction fails for four reasons: (1) Mr. Shah is

21  protected by the fiduciary shield doctrine, which provides that a person's activities

22  as part of their employment cannot be used to establish personal jurisdiction; (2)

23  Mr. Shah did not make an intentional act of copyright infringement; (3) Mr. Shah's

24  actions were not expressly aimed at California or the United States; and (4)

25  imposing personal jurisdiction on Mr. Shah, an individual network administrator in

26  Pakistan whose only involvement is based his employment, would be unreasonable.

27

28

## II.   STATEMENT OF FACTS

### A.   Defendant Haseeb Shah

Mr. Shah is a network administrator who has lived Pakistan his entire life. Declaration of Haseeb Shah in Support ("Shah Decl.") ¶ 2.  He has never travelled to or visited the United States or any other location in North or South America.  *Id*. He makes approximately US$24,000 a year.  *Id.* ¶ 35.

### B.   Plaintiff DISH

DISH is a Colorado company located in Englewood, Colorado.  Dkt. No. 1 ¶ 6.  DISH is the fourth largest pay-television service in the United States, with millions of subscribers using its products under the "DISH" and "Sling TV" brands. *Id.* ¶ 16.

### C.   DISH's Claims Against Mr. Shah

DISH filed this action in this District on November 20, 2018, alleging that certain set-top boxes sold by Defendant Jadoo TV violate copyright law because users of these set-top boxes can allegedly use the boxes to access content on the internet that DISH claims to exclusively license in the United States.  Dkt. No. 1 ¶¶ 1, 3, 17-20, 24, 30-35.

DISH claims that Mr. Shah "controlled computer servers storing copyrighted works" to which DISH has exclusive rights in the United States.  *Id.* ¶¶ 52, 66. Specifically, DISH contends that Mr. Shah controlled servers on which unidentified infringing video on demand ("VOD") content is stored.  *Id.* ¶¶ 49, 66.  According to DISH, that unidentified infringing VOD content is accessed from those servers controlled by Mr. Shah by users of Jadoo's set-top boxes in the United States.  *Id.* ¶ 66.

### D.   DISH's Claims Regarding Service

DISH claims that Mr. Shah was served with the summons and complaint in this case on three occasions: (1) on February 12, 2019, at a meeting with a process server in Islamabad at the headquarters of Pakistan's National Accountability

Bureau, (2) on March 23, 2019, when a copy of the summons and complaint was left at an address where Shah once lived, and (3) on April 19, 2019 when two associates of a law firm personally served Shah at that same address. *See* Dkt. No. 72 at 1. As explained below, Mr. Shah was not served at any of these alleged occasions, or at any other time.

DISH also claims to have emailed a copy of the summons and complaint to Mr. Shah on February 12, 2019, along with a waiver of service of summons. *Id.*; *see also* Dkt. No. 72-2, Ex. 4. DISH does not appear to contend that sending the waiver of service to Mr. Shah via email counts as service, nor could it. In any event, Mr. Shah did not see that email. Mr. Shah's son had just been born two weeks earlier, and Mr. Shah was not checking email during that time period. Shah Decl. ¶ 21. In fact, he had an away message set to autorespond to explain that he was not checking email due to the birth of his son. *Id.*

### 1.   Alleged February 12, 2019 service

According to DISH's process server Mr. Syed Shafaqat Hussain Shah ("Mr. Shafaqat," to distinguish him from Defendant Haseeb Shah), Mr. Shafaqat served Mr. Shah at a meeting in Islamabad, Pakistan on February 12, 2019. Dkt. No. 72-2, Ex. 3 ("Shafaqat Decl.") ¶¶ 9-20, 28. According to Mr. Shafaqat, he was invited by a "special prosecutor" named Mr. Imranul Haq to a meeting at Mr. Haq's office in the headquarters of Pakistan's National Accountability Bureau that day. *Id.* ¶¶ 12-14. Mr. Shafaqat claims that Mr. Imranul Haq accepted a copy of the summons and complaint at that meeting. *Id.* ¶¶ 15-18. Mr. Shafaqat also claims that Mr. Shah was present at that meeting but refused to accept service of the documents. *Id.* ¶¶ 19-20.

None of this is true. Mr. Shah has never met Imranul Haq or anyone else that works at Pakistan's National Accountability Bureau. Shah Decl. ¶ 7. Mr. Shah has never been to the headquarters of Pakistan's National Accountability Bureau. *Id.* Indeed, Mr. Shah was not in Islamabad at any time during February 2019, when the

meeting allegedly occurred. *Id.* Instead, he spent the month in his hometown, Abbottabad, Pakistan, with his family and newborn son. *Id.* Finally, Mr. Shah has never been in any meeting where he or anyone else was presented with legal documents by Mr. Shafaqat, nor was he ever in a meeting even resembling the meeting Mr. Shafaqat describes. *Id.*

## 2.    Alleged March 23, 2019 service

Mr. Shafaqat claims that he served the summons and complaint on Mr. Shah by delivering it to an address allegedly associated with Mr. Shah. Specifically, Mr. Shafaqat claims that on March 23, 2019, he visited a residence with address House # 01, Main Service Road North, I-8/2, Islamabad, Pakistan ("House #1 Address"). Shafaqat Decl. ¶ 23. Mr. Shafaqat claims that the house had previously been used as an office by Mr. Shah, a Ms. Bushra, and a Dr. Khurram. *Id.* The house was being renovated, and Mr Shafaqat claims that he learned from a servant named Aamir that the renovations were being carried out by Mr. Shah and Dr. Khurram as business partners. *Id.* Mr. Shafaqat claims that Aamir called Mr. Shah on his behalf. *Id.* ¶¶ 24-25. Mr. Shafaqat also claims that he "served" the summons and complaint by leaving them with the servant, Aamir.

Again, this story is not true. Mr. Shah lived at the House #1 Address from 2009 to 2013, as a rental. Shah Decl. ¶ 8. He does not own or have any interest in any property there, nor has he visited that address since he last lived there in 2013. *Id.* Mr. Shah does not know who Ms. Bushra or Dr. Khurram are, and he certainly is not business partners with either of them. *Id.* ¶ 9. Mr. Shah does not know who currently lives at or owns the House #1 Address. *Id.* ¶ 8. Nor does Mr. Shah know who the servant named Aamir is. *Id.* ¶ 10. And Mr. Shah did not receive a call on March 23 resembling the one that Mr. Shafaqat describes. *Id.*

## 3.    Alleged April 19, 2019 service

An attorney named Tasawar Hussain claims that he personally served the summons and complaint on Mr. Shah at the House #1 Address in Islamabad at 4:30

PM on April 19, 2019.  Dkt. No. 72-2, Ex. 7 ("Hussain POS").

Again, this is not true.  As explained above, Mr. Shah has not visited the House #1 Address since he lived there in 2013.  Shah Decl. ¶ 8.  Moreover, on April 19, Mr. Shah was not in Islamabad where he was allegedly served; rather he was in the city of Mansehra, Pakistan.  *Id.* ¶ 16.  Around 4:30 PM that day, he received a call from a courier who claimed to be at the House #1 Address in Islamabad with a package for Mr. Shah.  *Id.* ¶ 17.  According to the courier, no sender information was available on the package.  *Id.*  Mr. Shah told the courier that he was unable to receive the package and did not live at the House #1 Address.  *Id.*  The courier did not state that the package contained any court documents.  *Id.*

Mr. Shah did not sign the "Acknowledgement Receipt" in the Hussain POS.  *Id.*  Because Mr. Shah was not in Islamabad that day, he could not have signed that Acknowledgement Receipt.  *Id.*  The "Recipient Signature" in the Acknowledgement Receipt does not resemble Mr. Shah's signature, an example of which can be seen at the end of Mr. Shah's declaration.  *Id.*

### 4.    False pretenses

DISH may have had trouble serving Mr. Shah because DISH's process servers were apparently using false pretenses in contacting him.  Mr. Shafaqat claims that he spoke with Mr. Shah on the phone "in a discreet manner."  Shafaqat Decl. ¶ 21.  Mr. Shafaqat also states that during a different phone call he asked for Mr. Shah's email address so Mr. Shafaqat "could discuss a business proposal with him."  *Id.* ¶ 25.  Mr. Shah also recalls getting a telephone call from an unknown number, asking if Mr. Shah would be able to assist in setting up a television channel.  Shah Decl. ¶ 12.  That may have been Mr. Shafaqat.  *Id.*

### E.    Mr. Shah's Work for IDC Resources in Pakistan

Mr. Shah's only connection with the United States is that he performs network administration and related services for Jadoo TV through his work for a separate Pakistani company called IDC Resources.  Shah Decl. ¶ 33.  Mr. Shah is

currently a consultant for IDC Resources, although he used to be employed by IDC Resources full time. *Id.* ¶ 3. Mr. Shah has never provided services to Jadoo TV, or related to Jadoo TV, in his personal capacity. *Id.* ¶ 23. Rather, all the services he has provided to Jadoo TV have been through his work for IDC Resources. *Id.* Mr. Shah has never personally contracted with Jadoo TV. *Id.* ¶ 24. He believes that IDC Resources contracted with Jadoo TV, but he does not have personal knowledge of that fact. *Id.* Mr. Shah does not do business in the United States or with any customers in the United States. *Id.* ¶ 33. Jadoo TV's customers, including its customers in the United States, are not Mr. Shah's customers. *Id.*

The primary services that Mr. Shah provides to Jadoo TV are managing network operations, including managing Jadoo TV's use of content delivery networks ("CDNs"). *Id.* ¶ 26. CDNs are third party companies that assist in distributing content, such as video, via the internet. *Id.*

Mr. Shah does not personally host any video content used by or related to Jadoo TV. *Id.* ¶ 30. Rather, he believes that video content is or was hosted on servers owned and controlled by Jadoo TV. *Id.* Mr. Shah performs services managing networks operations related to those servers, but he does not have legal control over the servers. *Id.* Similarly, Mr. Shah does not have any legal control over the CDNs. *Id.* Rather, Jadoo TV maintains contracts with the CDNs. *Id.* Mr. Shah is not aware of any infringing content that was stored on Jadoo TV's servers, and he did not intend to infringe any copyrights in the United States. *Id.* ¶ 29.

## III.   ARGUMENT

### A.   The Complaint Against Mr. Shah Should Be Dismissed For Insufficient Service of Process

#### 1.   Legal Standard

"[A]n action may be dismissed for insufficient service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure. Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Indie Source, Inc. v. Where I'm From Apparel, LLC*, 2015 WL 13357675, at *1

- 6 -

(C.D. Cal. Aug. 17, 2015).

### 2.      Mr. Shah has not been served

As explained above, DISH contends that Mr. Shah was served on three separate occasions:  (1) on February 12, 2019, at a meeting with a process server in Islamabad at the headquarters of Pakistan's National Accountability Bureau, (2) on March 23, 2019, when a copy of the summons and complaint was left at an address where Shah once lived, and (3) on April 19, 2019 when two associates of a law firm personally served Shah at that same address.  *See* Dkt. No. 72 at 1.  Each of these claims is untrue.  Mr. Shah did not attend the alleged February 12 meeting; in fact, he was not in Islamabad at any time that month, nor has he ever been to the headquarters of Pakistan's National Accountability Bureau.  Shah Decl. ¶ 7.  Mr. Shah no longer lives at the address where he was allegedly served on March 23; moreover, he has not visited that address in years, nor does he know who currently owns or lives in the property there.  *Id.* ¶ 8.  And Mr. Shah was not personally served at that address on April 19; again, Mr. Shah has not visited that address in years, and was not in Islamabad that day.  *Id.* ¶¶ 8, 16.

Evidence and witnesses in Pakistan would support Mr. Shah's claims that he has not been personally served.  For example, DISH claims that a prosecutor named Imranul Haq was present at the alleged February 12, 2019 meeting.  Shafaqat Decl. ¶¶ 15-20.  Mr. Haq's testimony would likely confirm that Mr. Shah was not served at that meeting.  In addition, Mr. Shah engaged in an ATM transaction and grocery store purchase in Mansehra, Pakistan on April 19, when he was allegedly personally served in Islamabad.  Shah Decl. ¶¶ 18-19.  The ATM footage and testimony from the grocery store manager would confirm that Mr. Shah was not in Islamabad when he was allegedly served there.  *Id.*

### 3.      Even if Mr. Shah had been served, such service would be ineffective because it did not follow the requirements of the Hague Convention

Even if Mr. Shah had been served, such service would be ineffective because

it would not have complied with the Hague Service Convention.  In *Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*, the plaintiff used a private attorney to personally deliver the summons and complaint to the defendant in Pakistan.  2006 WL 2015188, at *3 (S.D.N.Y. July 13, 2006).  The court explained that was insufficient:

> As Pakistan, the country in which [defendant] Nishat is located, is a signatory to the Hague Convention, the Federal Rules required service to Nishat in a manner consistent with the Convention's provisions. Plaintiff's attempted service of process by the use of a private attorney to personally deliver the summons and complaint in Pakistan to Nishat is insufficient to meet the requirements of the Hague Convention. The Hague Convention is the method of service to be used between countries that are party to the Convention. The Convention provides simple and certain means by which to serve process on a foreign national. The Hague Convention provides that an applicant must send a request for service directly to the central authority designated by the government of the receiving country, who will then serve the document or shall arrange to have it served by the appropriate agency.

*Id.* (citation and quotation omitted).  Accordingly, even if DISH had personally delivered the summons and complaint to Mr. Shah in Pakistan, that would not be sufficient service of process. *See id.*  Accordingly, as in *Gateway Overseas*, the case against Mr. Shah should be dismissed for insufficient service of process.

### B.    The Complaint Against Mr. Shah Should Be Dismissed For Lack Of Personal Jurisdiction

#### 1.    Legal Standard

Where a defendant challenges personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the exercise of personal jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  While uncontroverted allegations are taken as true, the

- 8 -

plaintiff cannot "rest on the bare allegations of its complaint, but rather [is] obligated to come forward with facts" supporting jurisdiction. *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).

### 2. DISH does not contend general jurisdiction applies, and it does not

DISH does not assert that this Court has general jurisdiction over Haseeb Shah (*see* Dkt. No. 1 at ¶¶ 13-14), and general jurisdiction could not apply. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The standard for establishing general jurisdiction over a non-resident is "exacting" and requires "continuous and systematic general business contacts" that "approximate physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801. Here, Mr. Shah is a Pakistani citizen and has resided in Pakistan for his entire life. Shah Decl. ¶ 2. He has never visited California, the United States, North America, or South America. *Id*. Mr. Shah has no connection to the United States or California that would begin to approach the standard needed to establish general jurisdiction. General jurisdiction does not apply.

### 3. Shah is not subject to specific jurisdiction

Specific jurisdiction requires that the foreign defendant have "minimum contacts" with the relevant forum such that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Specific jurisdiction exists only if (1) the defendant (a) purposefully directs its activities or consummates some transaction with the forum or a forum resident or (b) performs some act by which it purposefully avails itself of the privilege of conducting activities in the forum; (2) each claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Id*.

The same analysis applies to DISH's alternative theory that Shah is subject to personal jurisdiction under Rule 4(k)(2) of the Federal Rules of Civil Procedure. *See* Dkt. No. 1. ¶ 14.  That rule provides for personal jurisdiction if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and "exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).  "[T]he rule provides for what amounts to a federal long-arm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002).  California's long arm-statue is coextensive with federal due process requirements. *Schwarzenegger*, 374 F.3d at 800-801.  Accordingly, "the due process analysis is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).  The bar for establishing jurisdiction through Rule 4(k)(2) is "relatively high." *Fumoto Giken Co. Ltd. v. Mistuoka*, 2015 WL 12766167, at *4 (C.D. Cal. Apr. 16, 2015).  A court noted in 2015 that the Ninth Circuit had never countenanced jurisdiction under that rule. *Id.*

Personal jurisdiction over Mr. Shah is inappropriate for four independent reasons.  First, Mr. Shah is protected by the fiduciary shield doctrine, which shields the actions of someone as part of their employment from being used to establish personal jurisdiction.  Second, Mr. Shah did not make an intentional act of copyright infringement.  Third, Mr. Shah's actions were not directed at either California or the United States.  And fourth, imposing personal jurisdiction over Mr. Shah would be unreasonable.

### a.     Mr. Shah is protected by the fiduciary shield doctrine

As an initial matter, Mr. Shah cannot be subject to personal jurisdiction because any allegedly harmful actions he may have taken were done on behalf of IDC Resources, a third party corporate entity, which in turn provided services to

Jadoo TV, a second third party corporate entity.  "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person."  *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).  In other words, "[i]f the corporate employee's only contacts with the forum state were functions of his employment, no personal jurisdiction exists."  *State Narrow Fabrics, Inc. v. Fisher*, 2016 WL 11002147, at *3 (C.D. Cal. Nov. 16, 2016).  Because Mr. Shah's only alleged contacts with California or the United States were functions of his employment, DISH cannot establish personal jurisdiction over him.

There are two exceptions to the fiduciary shield doctrine, but neither applies here.  The first exception applies if the defendant "was the 'guiding spirit' behind the wrongful conduct or the 'central figure' in the challenged corporate activity."  *Id.*  Here, Mr. Shah has no role as a "guiding spirit" or "central figure" for the relevant activity.  Mr. Shah's actual role is as a consultant who manages network operations for Jadoo TV through his role at IDC Resources.  Shah Decl. ¶¶ 3, 22, 30.  The second exception to the fiduciary shield doctrine applies when the "corporation is merely the alter-ego of [the] individual defendant."  *State Narrow Fabrics*, 2016 WL 11002147, at *5.  "To make such a showing, a plaintiff must allege (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist; and (2) that failure to disregard their separate identities would result in fraud or injustice."  *Id.*  Here, there are no allegations that either IDC Resources or Jadoo TV are alter egos of Mr. Shah.  And, indeed, neither is.  Mr. Shah does not even have an ownership interest in either IDC Resources or in Jadoo TV.  Shah Decl. ¶ 25.

### b.  DISH has not identified an intentional act of infringement by Mr. Shah

Assuming—contrary to the fiduciary shield doctrine—that Mr. Shah's activities on behalf of IDC Resources for Jadoo TV could support a finding of

- 11 -

personal jurisdiction, personal jurisdiction still fails for the independent reason that Mr. Shah has not undertaken an express act of copyright infringement, as required by the first prong of the test for specific jurisdiction.  For a copyright claim, a three part "effects" test determines whether the first prong of the specific jurisdiction analysis is met. *BWP Media USA Inc. v. Kemp Commc'ns, Inc*., 2016 WL 6917278, at *2 (C.D. Cal. Feb. 12, 2016).  The test requires a defendant to have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* (citing *Schwarzenegger*, 374 F.3d at 802-3, 806).  The inquiry focuses on whether the defendant's suit-related conduct creates a "substantial connection" with the forum. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014).  Here, Mr. Shah's alleged conduct fails to satisfy any part of the three-prong test, let alone all three parts as would be necessary to show "purposeful availment."

DISH fails to meet prong one of the effects test because DISH fails to assert that Mr. Shah committed any intentional act that violates DISH's copyright.  DISH alleges, "upon information and belief," that infringing VOD content is hosted from computer servers, "at least some of which were controlled by Shah."  Dkt. No. 1 ¶ 49, 52.  This cursory allegation, made without any factual backing and "on information and belief," is insufficient to support personal jurisdiction.  Mr. Shah, moreover, disputes these facts.  In reality, Mr. Shah manages network and CDN operations for Jadoo TV.  Shah Decl. ¶¶ 3, 22, 30.  He does not personally distribute any video content. *Id.* ¶ 30.

In addition, DISH's vague allegations about Mr. Shah fail to support personal jurisdiction because they are devoid of any facts.  DISH fails to identify any allegedly infringing movies or content that was allegedly distributed to the United States or California from servers allegedly controlled by Mr. Shah.  DISH fails to identify the service provider for the allegedly infringing servers or state where those servers are located.  DISH also fails to identify where any allegedly infringing

content from these servers was distributed, whether in California, the United States, or anywhere else.  DISH's *sole* factual allegation relating to Mr. Shah is that an unidentified service provider of an unidentified server hosting unidentified allegedly infringing content provided DISH a "customer's name and email address, which upon investigation were linked to Shah."  Dkt. No. 1 ¶ 50.  Threadbare evidence tying a server via an unspecified "linkage" to Mr. Shah is wholly insufficient to demonstrate that Mr. Shah made an intentional act of copyright infringement.  DISH has therefore failed to allege any intentional act by Mr. Shah that violates DISH's copyright, so personal jurisdiction should fail.

### c.      DISH has not identified an intentional act expressly aimed at California or the United States

DISH also fails to meet prong two of the effects test, because DISH cannot identify any conduct that was expressly aimed at the forum state.  That is, even if Mr. Shah were somehow deemed to bear some personal responsibility based on his role managing network operations for Jadoo TV as part of his employment with IDC Resources, such activities were in no way expressly aimed at California or the United States.

As explained above, Mr. Shah does not himself distribute any video content.  Rather, Mr. Shah manages the network and CDN operations for Jadoo TV and its servers.  Shah Decl. ¶¶ 3, 22. 30.  The Jadoo TV servers managed by Mr. Shah do not presently store any VOD content.  *Id.* ¶ 28.  Previously, Jadoo TV servers did store some licensed content from former Jadoo TV content partners.  *Id.* ¶ 29.  That content was passive: the servers merely made the content available to Jadoo TV set-top box users anywhere in the world.  *Id.* ¶¶ 31-32.

Accordingly, Jadoo TV's VOD servers were, at best, equivalent to a passive website in a remote jurisdiction from which anyone could obtain content—activity that courts have repeatedly found insufficient to create personal jurisdiction.  *See, e.g., Life Alert Emergency Response, Inc. v. Lifealert Sec., Inc.*, 2008 WL 5412431,

at *3 (C.D. Cal. Dec. 29, 2008).  "Mere accessibility of a website does not confer personal jurisdiction over an out-of-state defendant." *FameFlynet v. KASW*, 2015 WL 12819133 (C.D. Cal. Dec. 7, 2015).  In these website cases, establishing personal jurisdiction requires "something more" than a passive website.  *Rio Props, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002).  Typically, this is shown through the defendant's specific targeting of consumers in the forum state through ads.  *Id.*  DISH states no facts alleging that Mr. Shah, whose role is to manage servers, specifically targeted consumers in California or the United States with ads.  And, indeed, Mr. Shah did not advertise any Jadoo TV products or services.  Shah Decl. ¶¶ 31, 34.

Personal jurisdiction is inappropriate because Mr. Shah did not take any action that was expressly aimed at California or the United States.

### d. Exercising jurisdiction over Shah would not be reasonable

Most importantly, personal jurisdiction is inappropriate because it would be manifestly unreasonable to impose jurisdiction in the United States over Mr. Shah, a network consultant in Pakistan who has never visited the United States.  "Reasonableness" is an independent prong of the personal jurisdiction analysis.  *See, e.g.*, *Glencore Grain*, 284 F.3d at 1128 ("even if [defendant's] conduct supported the exercise of jurisdiction, that exercise would be unreasonable given the circumstances of this case").  In determining whether the exercise of jurisdiction is reasonable, courts consider seven factors: "(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104,

1114 (9th Cir. 2002).  Here, each of the factors is either neutral or weighs against jurisdiction.

### e.     Purposeful injection

The "purposeful injection" factor essentially asks the same question as the second prong of the "effects" test described above—did the defendant take some action that purposefully injected him into (i.e., was expressly aimed at) the forum state.  *See, e.g., Glencore Grain*, 284 F.3d at 1125.  As explained above, Mr. Shah did not direct any intentional infringing activity to California or the United States.  Rather, he merely managed network operations and CDNs for his employer IDC Resources, which was in turn providing services to Jadoo TV.  Shah Decl. ¶¶ 23-26.  He did not personally serve any video content; at most he managed Jadoo TV servers providing video content.  *Id.* ¶ 30.  Moreover, even if servers he managed made infringing content available—which DISH has not shown or even alleged with any specificity—those servers passively made that infringing content available to Jadoo TV users located anywhere in the world.  Mr. Shah did not take any action purposefully injecting himself into the affairs of California or the United States, so this factor weighs heavily against jurisdiction.

### f.     Extreme burden on Mr. Shah

"The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano County*, 480 U.S. 102, 114 (1982).

Due to the extreme financial burden, it would be essentially impossible for Mr. Shah to litigate in California or the United States.  Mr. Shah's annual income is approximately U.S. $24,000.  Shah Decl. ¶ 35.  Accordingly, Mr. Shah, cannot afford to hire attorneys to represent himself for any reasonable period of time.  *Id.* ¶ 39.  Jadoo TV's CEO, Sajid Sohail, has agreed to pay for the costs of this motion to dismiss.  *Id.*  Mr. Shah does not know how long Mr. Sohail will be willing or able

to contribute to his defense.  *Id.*  Jadoo TV is unable to pay for Mr. Shah's defense because it is in the process of seeking bankruptcy protection and expects to file in bankruptcy court by the first week of June.  Given an annual income of $24,000, Mr. Shah could not even litigate pro se.  A single trip to California from Pakistan could cost $2,000, which amounts to an entire month's worth of income for Mr. Shah.  *Id.* ¶ 37.  Indeed, due to the high cost of such travel, Mr. Shah has never visited the United States.  *Id.* ¶ 38.  Mr. Shah is also unfamiliar with United States law and speaks English as a second language, and so he could not effectively litigate this case pro se, even if he could represent himself completely remotely.  *See id.* ¶ 41.  Moreover, most of the witnesses and evidence that Mr. Shah would call in his defense likely live in Pakistan, adding to the burden of litigating in the United States.  *Id.* ¶ 40; *see Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993).

In *Glencore Grain*, the Ninth Circuit found that the burden on the defendant, a company in India, to defend itself in California was "great."  284 F.3d at 1125. This is even more true with respect to Mr. Shah, who does not have corporate resources behind him.

### g.  Conflict with Pakistan's sovereignty

"Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty barrier is high and undermines the reasonableness of personal jurisdiction."  *Amoco Egypt*, 1 F.3d at 852.  "Sovereignty concerns weigh more heavily when the defendants have no United States-based relationships."  *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993).

Mr. Shah is a citizen of Pakistan and has lived there his entire life.  Shah Decl. ¶ 2.  He has never visited the United States.  *Id.* ¶¶ 2, 38.  And he has no United States-based relationships.  His only connection with the United States is that he provided services to Jadoo TV through his work for IDC Resources in

Pakistan. *Id.* ¶ 33. Accordingly, this factor weighs strongly against personal jurisdiction in the United States.

### h. California's interest in adjudicating the dispute

California, and the United States, have little interest in the dispute between DISH and Mr. Shah. As explained above, Mr. Shah does not do business in the United States, does not have any customers in the United States, does not advertise in the United States, and has never been to the United States. California has little interest in his actions as a network administrator in Pakistan. To the extent California has an interest in the copyright infringement claims relating to the Jadoo TV set-top boxes, that interest cannot be imputed to Mr. Shah.

### i. Efficient resolution of the controversy

"[T]his factor involves a comparison of alternative forums." *Amoco Egypt*, 1 F.3d at 852. In evaluating this factor, courts look "primarily at where the witnesses and the evidence are likely to be located." *Core-Vent*, 11 F.3d at 1489. It would be far more efficient to try DISH's claims against Mr. Shah in Pakistan. Most of the witnesses that Mr. Shah would call in his defense live in Pakistan. Shah Decl. ¶ 40. It would be difficult or impossible to obtain their testimony in U.S. litigation.

The parties' dispute regarding whether or nor Mr. Shah has been served with the summons and complaint exemplifies why it would be more efficient to try this controversy in Pakistan. All of the potential witnesses and sources of evidence relevant to this factual dispute are located in Pakistan, which creates numerous legal and logistical difficulties in obtaining discovery relating to the dispute in the United States.

### j. Plaintiff's interest in the forum

"Although the importance of the forum to the plaintiff nominally remains part of this test, cases have cast doubt on its significance." *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995). "[N]either the Supreme Court nor our court has given much weight to inconvenience to the plaintiff."

*Core-Vent*, 11 F.3d at 1490.  "A mere preference on the part of the plaintiff for its home forum does not affect the balancing."  *Id.*  Accordingly, this factor is neutral.

### k.  Existence of an alternate forum

As the plaintiff, DISH has the burden of proving the unavailability of an alternative forum.  *Amoco Egypt*, 1 F.3d at 853.  It cannot do so.  According to the World Intellectual Property Organization, Pakistan is a signatory to the Berne Convention for the Protection of Literary and Artistic Works.[1]  Furthermore, in Pakistan, copyright protection is provided by the Copyright Ordinance of 1962.[2]  Whether the maintenance of a suit in Pakistan would "be costly and inconvenient" for DISH is irrelevant; rather, DISH would have to show that its "claims cannot be effectively remedied there."  *See Core-Vent*, 11 F.3d at 1490.

Accordingly, all but one of the factors weighs against imposing personal jurisdiction, and the last factor is neutral.  It would be manifestly unreasonable and against due process to force Mr. Shah to litigate in the United States.

### 4.  DISH's complaint should be dismissed with prejudice

Because all of the allegedly harmful acts were conducted as part of Mr. Shah's employment with IDC Resources, the fiduciary shield doctrine protects Mr. Shah from being subject to personal jurisdiction in the United States.  No re-pleading can change this fact, and accordingly DISH's complaint against Mr. Shah should be dismissed with prejudice.  The same applies to the fact that Mr. Shah does not personally host the allegedly infringing video content.  Rather, at most Mr. Shah managed network and CDN operations for Jadoo TV's own servers.  No re-pleading can change this fact, so the complaint should be dismissed with prejudice.

Similarly, no re-pleading could possibly make reasonable the imposition of personal jurisdiction upon Mr. Shah, a network administrator in Pakistan who has never visited the United States, does not do business in the United States, and

---

[1] See https://wipolex.wipo.int/en/legislation/profile/PK.
[2] See https://wipolex.wipo.int/en/legislation/details/3482.

makes only $24,000 a year.  Accordingly, DISH's complaint against Mr. Shah should be dismissed with prejudice for this reason as well.

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against Mr. Shah with prejudice for lack of personal jurisdiction and insufficient service of process.


Dated: May 24, 2019                    DARIN W. SNYDER
                                       ALEXANDER B. PARKER
                                       BILL TRAC
                                       ASHISH SUDHAKARAN
                                       O'MELVENY & MYERS LLP


                                       By:  */s/ Darin W. Snyder*
                                             Darin W. Snyder

                                       Attorneys for Defendant
                                       HASEEB SHAH