DARIN W. SNYDER (S.B. #136003)
dsnyder@omm.com
ALEXANDER B. PARKER (S.B. #264705)
aparker@omm.com
BILL TRAC (S.B. #281437)
btrac@omm.com
ASHISH SUDHAKARAN (S.B. # 312941)
asudhakaran@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, California  94111-3823
Telephone:    (415) 984-8700
Facsimile:     (415) 984-8701

Attorneys for Defendants
JADOOTV, INC., SAJID SOHAIL,
and HASEEB SHAH

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C.,<br><br>           Plaintiff,<br><br>     v.<br><br>JADOOTV, INC., SAJID SOHAIL, HASEEB SHAH, EAST WEST AUDIO VIDEO, INC., and PUNIT BHATT,<br><br>           Defendants. | Case No. 2:18-cv-09768-FMO-KS<br><br>**DECLARATION OF HASEEB SHAH IN SUPPORT OF MOTION TO DISMISS**<br><br>[Filed concurrently herewith (1) Defendant Haseeb Shah's Motion to Dismiss, (2) Proposed Order] |

# DECLARATION OF HASEEB SHAH

I, Haseeb Shah, under penalty of perjury, declare as follows:

1. I submit this declaration based upon my personal knowledge in support of Defendant Haseeb Shah's Motion to Dismiss for Insufficient Service and Lack of Personal Jurisdiction. I have personal knowledge of the facts set forth herein and, if called upon, I could and would testify thereto.

2. I am a citizen of and live in the country of Pakistan. I have lived in Pakistan for my entire life. I have never travelled to or visited the United States, or any other location in North or South America.

3. I am a consultant for a Pakistani company called IDC Resources. I was previously an employee of IDC Resources. I perform network administration and related services for IDC Resources.

## Service

4. To the best of my knowledge, I have never been personally served or presented with any documents in connection with this litigation.

5. I have reviewed the Affidavit of Syed Shafaqat Hussain Shah ("Mr. Shafaqat") dated April 26, 2019, which was filed by DISH as Dkt. No. 72-2, Exhibit 3 ("Shafaqat Decl.")

6. I understand that Mr. Shafaqat claims to have personally served me on February 12, 2019 and on March 23, 2019. Shafaqat Decl. ¶ 28. This is untrue. As I will explain, I was not personally served on either of those days.

7. Mr. Shafaqat claims that I was served on February 12, 2019, at a meeting in Islamabad, Pakistan, where I was allegedly present and represented by a "special prosecutor" named Mr. Imranul Haq at the headquarters of the Pakistan National Accountability Bureau. *Id.* ¶¶ 9-20. This is untrue. To my knowledge, I have never met Imranul Haq or anyone else who works at the National Accountability Bureau. Second, I have never been to the headquarters of the Pakistan National Accountability Bureau. Third, I was not in Islamabad at any time

1 during the month of February 2019.  My wife gave birth to our newborn son on January 31, 2019, and so I spent that month with my family in my hometown, Abbottabad, Pakistan.  Abbottabad is a city approximately 75 miles north of Islamabad.  Finally, I was never in a meeting where I or any other person was presented with legal documents by Mr. Shafaqat, or in any meeting resembling the one that Mr. Shafaqat describes.

8. Mr. Shafaqat claims that I was served on March 23, 2019.  Shafaqat Decl. ¶¶ 23-26, 28.  This is untrue.  Mr. Shafaqat claims that he effected service at the following address:  House # 01, Main Service Road North, I-8/2, Islamabad.  I lived at this address from 2009-2013, as a rental.  I do not own or have any interest in any property at that address, and I have not visited that address since I last lived there in 2013.  I do not know who currently owns or lives at that address.

9. Mr. Shafaqat claims that the property at the address was being renovated by myself, a Ms. Bushra, and a Dr. Khurram as business partners.  *Id.* ¶ 23.  I do not know who these people are, and I certainly am not business partners with them.

10. Mr. Shafaqat also claims to have spoken with a servant named Aamir.  *Id.*  Again, I do not know who this person is.  Mr. Shafaqat also claims that Aamir dialed my telephone number from his cell phone and gave the phone to me.  *Id.* ¶¶ 24-25.  I do not recall receiving such a call on this date.

11. Mr. Shafaqat apparently claims that he "served" me by providing the complaint and summons to the servant named Aamir.  *Id.* ¶ 18.  Again, I do not know who that person is, and he therefore is not authorized to accept service on my behalf.

12. I believe that I may have spoken with Mr. Shafaqat via the telephone.  Mr. Shafaqat claims that he talked with me "in a discreet manner" on March 15, 2019.  *Id.* ¶ 21.  He claims later that he asked to discuss a "business proposal" with him.  *Id.* ¶ 25.  I recall getting at telephone call from an unknown number asking if

1  I could provide assistance in setting up a television channel.  That may have been
2  Mr. Shafaqat.  He did not mention any court documents during our discussion.  I
3  told the person who called that I could assist but was unable to meet in person.
4        13.     Below is a true and correct copy of an email that I received on March
5  18, 2019.  I believe that the sender may be Mr. Shafaqat.



       14.    Mr. Shafaqat claims that he sent an email on or after March 23, 2019,
along with 2-3 reminders.  Shafaqat Decl. ¶ 27.  I have checked my email account
and I do not see any emails that could be the emails that Mr. Shafaqat claims to
have sent.

- 3 -

SHAH DECL. ISO MOTION TO DISMISS
CASE NO. 2:18-CV-09768-FMO-KS

15.     I have reviewed the proof of service signed by Tasawar Hussain, which was filed by DISH as Dkt. No. 66 ("Hussein POS").  I understand that Mr. Hussain claims that I was personally served with the complaint and summons at 4:30 PM on April 4, 2019 at the same address, House # 01, Main Service Road North, I-8/2, Islamabad.  *See* Hussein POS.  This is untrue.

16.     As I have stated previously, I have not been to that address since I lived there in 2013.  In addition, on April 19, 2019, I was not in Islamabad, the city where I was allegedly served.  Instead, on April 19, 2019, I was with my family in Mansehra, Pakistan, a city which is north of Abbottabad.  Around noon, on that date, I received a call from an unknown number.  The caller claimed to be from a courier company and stated that he had to deliver a package at the House #1 address in Islamabad.  At the time, I was picking up my daughter from school, so I told the person to call in a couple of hours.

17.     Later that day, around 4:30 PM, I received a call from the same number.  The courier stated that he was at the House #1 address in Islamabad.  I asked the courier who had sent the package, and he responded there was no sender information available.  I told the courier that I was unable to receive the package and did not live at the House #1 address.  The courier did not state that the package included any court documents.  I did not sign the "Acknowledgement Receipt" in the Hussein POS.  In fact, because I was not in Islamabad that day, I could not have signed that "Acknowledgement Receipt."  The "Recipient Signature" in the Acknowledgement Receipt does not resemble my signature, and example of which can be seen at the end of this declaration.

18.     Shortly after the 4:30 PM call on April 19, 2019, I conducted an ATM transaction at a bank in Mansehra.  I believe that footage from that ATM could be obtained through a Pakistani court order, and I believe that footage would firmly establish that I was indeed in Mansehra at the time when I was allegedly served in Islamabad.

19. At around 5:00 PM on April 19, 2019, I made a purchase from Hazara Cash & Carry, a grocery store in Mansehra. The manager there, Mr. Ali, can confirm that I was personally present in Mansehra, and not in Islamabad where I was allegedly served.

20. In addition, I have friends and family members who would be able to confirm that I was in Abbottabad on February 12, 2019 and in Mansehra on April 19, 2019, when I was allegedly served in Islamabad. These friends and family members live in Abbottabad and Mansehra, Pakistan.

21. I understand that a lawyer for DISH claims to have emailed the summons and complaint to me on February 12, 2019. As explained above, my son was just born two weeks earlier, on January 31, and I was not checking my email during that time period. I had an away message set to autorespond to explain that I was not checking my email due to the birth of my son.

**No Contacts with the United States**

22. Through my work for IDC Resources, I have provided services related to network operations for Jadoo TV.

23. I have never provided services to Jadoo TV, or related to Jadoo TV, in my personal capacity. Rather, all services I have provided to Jadoo TV, or related to Jadoo TV, have been through my work for IDC Resources.

24. I have never personally contracted with Jadoo TV. I believe that IDC Resources has contracted with Jadoo TV, but I do not have personal knowledge of this.

25. I do not have an ownership interest in IDC Resources or in Jadoo TV.

26. The primary services that I provide to Jadoo TV are managing network operations and content delivery networks ("CDNs"). CDNs are third-party services that assist in distributing content via the internet.

27. I understand that DISH also alleges that I "controlled computer servers storing [infringing copyrighted works]" that were accessed by users of Jadoo set-

1  top boxes.  Dkt. No. 1 ¶ 52.  To the extent I understand this, I believe it is incorrect.
2  First, as explained below, I do not "control" the servers used for Jadoo TV.
3  Second, I do not believe that there was any infringing content stored on the Jadoo
4  TV servers that I managed.  But because DISH does not identify the alleged
5  infringing works, I cannot completely evaluate their claim.

6  　　　　28.　Currently, the only VOD content that I manage for Jadoo TV comes
7  from a television company called Eros Now.  My understanding is that Jadoo TV
8  has licensed video content from Eros Now.  None of the servers that I manage
9  actually stores the Eros Now content.  Instead, the Eros Now content is streamed
10 from Eros Now's own servers, via Eros Now's own CDN, to the Jadoo TV set-top
11 boxes.

12 　　　　29.　In the past, some Jadoo TV servers stored licensed video content
13 received from other television companies with which Jadoo TV previously had
14 licenses.  I am not aware of any Jadoo TV servers storing any television content to
15 which Jadoo TV did not have the rights.  I did not intend to infringe any rights
16 owned by DISH or anyone else in the United States.

17 　　　　30.　I understand that DISH alleges that I "control" servers that provide
18 some VOD content to Jadoo set-top boxes.  Dkt. No. 1 ¶ 49.  This is not true.  My
19 role is managing network operations and CDNs for Jadoo TV.  I did not personally
20 host any video content that is connected in any way to Jadoo TV.  I do not have
21 legal control over Jadoo TV's operations or its servers.  For example, I did not own
22 the Jadoo TV servers or have any legal control over the servers or the CDNs.  I
23 believe that Jadoo TV owns the servers and maintains contracts with the CDNs, but
24 I do not have any personal knowledge of this.

25 　　　　31.　The Jadoo TV servers that I manage do not publish or advertise their
26 contents publicly.  Rather, people can use a Jadoo TV set-top box to access the
27 video content on the Jadoo TV servers from anywhere in the world.
28

32. The Jadoo TV servers that I manage do not engage in any commercial transactions with any customer, anywhere in the world.

33. I do not do any business in the United States or with any customers located in the United States. Jadoo TV's customers, including its customers in the United States, are not my customers. My only connection to the United States is that I provide services to Jadoo TV, through my work for IDC Resources.

34. I do not advertise to any customers or potential customers in the United States. I do not conduct any advertising relating to Jadoo TV.

### Financial Hardship

35. It would be an extreme financial hardship if I were required to litigate in the United States. My monthly income is approximately U.S. $2,000 and my annual income is approximately U.S. $24,000.

36. A single round trip ticket to the United States would require a significant percentage of my entire annual income. The closest major airport to my home in Mansehra is Islamabad International Airport ("ISB"), in Islamabad, Pakistan. I searched on the website flights.google.com for flights from ISB to Los Angeles International Airport ("LAX"). Based on my searches, a round trip ticket from ISB to Los Angeles costs between approximately $1,050 to $1,320. Below is a representative price graph for such tickets from flights.google.com:



37. Factoring in accommodations, air and ground transportation, and food costs, a single trip to the United States for several days could cost $2,000 or more. $2,000 is my entire monthly income. Accordingly, even a single trip to the United States would represent an extreme financial hardship.

38. Due to the high costs of travel, I have never travelled to or visited the United States. In fact, I have never travelled to or visited North America or South America.

39. Because my annual income is only U.S. $24,000, I cannot afford to hire attorneys in the United States to represent my interests in this litigation for any prolonged period of time. I understand that Sajid Sohail, the CEO of Jadoo TV, plans to assist by paying the attorney fees associated with this motion. But I do not know how long he will be willing or able to continue to pay for those attorney fees.

40. Most of the witnesses and evidence that I would use in my defense are located in Pakistan.

41. I am unfamiliar with U.S. law, and I speak English as a second language.

I declare under penalty of perjury under the laws of California and the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed at Mansehra, Pakistan, this 24th day of May, 2019.



By: _____
Haseeb Shah