Timothy M. Frank (California Bar No. 263245)
timothy.frank@hnbllc.com
Joseph H. Boyle (*pro hac vice*)
joe.boyle@hnbllc.com
Stephen M. Ferguson (*pro hac vice*)
stephen.ferguson@hnbllc.com
HAGAN NOLL & BOYLE LLC
820 Gessner, Suite 940
Houston, Texas 77024
Telephone: (713) 343-0478
Facsimile: (713) 758-0146

David A. Van Riper (California Bar No. 128059)
dave@vanriperlaw.com
VAN RIPER LAW
1254 Irvine Blvd., Suite 200
Tustin, California 92780-3571
Telephone: (714) 731-1800
Facsimile: (714) 731-1811

Attorneys for Plaintiff DISH Network L.L.C.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> JADOO TV, INC. et al., <br><br> Defendants. | Case No. 2:18-cv-9768-FMO (KSx) <br><br> **DISH NETWORK L.L.C.'S OPPOSITION TO DEFENDANT HASEEB SHAH'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(5)** <br><br> Date: July 11, 2019 <br> Time: 10:00 a.m. <br> Ctrm: 6D <br> Judge: Hon. Fernando M. Olguin |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................1

II.  ARGUMENT & AUTHORITIES ................................................2

   A.   Shah Has Been Served in Accordance with Rule 4 and the Hague
      Service Convention. ................................................2

    1.   DISH's Service on Shah is Presumed Valid and all Factual Disputes are
       Properly Resolved in DISH's Favor. .............................2

    2.   Shah Was Personally Served by Two Pakistani Attorneys After He Evaded
       Service for Months. .............................................2

    3.   Service Was Proper Under Rule 4 and The Hague Service Convention. ...5

   B.   Shah is Subject to Personal Jurisdiction in This Court. ................6

    1.   The Fiduciary Shield Doctrine Does Not Extend to Independent
       Contractors. ...................................................7

    2.   Shah's Actions Were Not Undertaken in a Corporate Capacity. ........8

      a)   Shah Controlled the Domain and Computer Server Used to
        Transmit Protected Content. ................................9

      b)   Shah Controlled the Domain and Computer Servers Used to
        Transmit Channels Airing Protected Content. ................9

      c)   Shah Provided GitHub Files that Added eMedia SASP and VOD to
        Jadoo Boxes. ..............................................11

      d)   Shah Provided a YouTube Video that Shows Jadoo Users how to
        Locate and Install eMedia SASP. ...........................11

    3.   Shah's Activities are Within the "Primary Participant" Exception to the
       Fiduciary Shield Doctrine. ....................................12

    4.   Shah Purposefully Directed Infringing Activity into the United States and
       California ......................................................15

      a) Shah Committed an Intentional Act. ...........................16

**DISH's Opposition to Haseeb**
**Shah's Motion to Dismiss**

b)  Shah's Actions Were Expressly Aimed at California, or Alternatively, the United States as a Whole. ................................ 17

c)  Shah Knew that DISH was likely to be Harmed in the United States and California. ............................................................... 19

5.  This Court's Exercise of Personal Jurisdiction over Shah is Reasonable. 19

a)  Purposeful Interjection ................................................................. 20

b)  Shah's Burden is Not Dispositive ................................................ 20

c)  Conflict in Sovereignty is Minimal ............................................. 21

d)  California and the United States Have a Strong Interest in Adjudicating this Suit ................................................................... 22

e)  Most Efficient Judicial Resolution of the Dispute ....................... 22

f)  Convenience and Effectiveness of Relief for the Plaintiff ............. 23

g)  Existence of an Alternative Forum is Speculative ........................ 23

C.  Dismissal is Unwarranted Because JadooTV Failed to Respond to Discovery Pertaining to Shah ................................................................... 24

II. CONCLUSION ............................................................................................. 25

**DISH's Opposition to Haseeb
Shah's Motion to Dismiss**

# TABLE OF AUTHORITIES

## Cases

*Adobe Sys. Inc. v. Accoladian Res., LLC,*
 2014 WL 3737979 (N.D. Cal. July 28, 2014)..............................................14

*AirWair Int'l Ltd. v. Schultz,*
 73 F. Supp. 3d 1225 (N.D. Cal. 2014).........................................................23

*Allstar Mktg. Grp., LLC v. YourStore Online, LLC,*
 666 F. Supp. 2d 1109 (C.D. Cal. 2009)..................................................8, 12

*Andrews v. All Green Carpet & Floor Cleaning Serv.,*
 2015 WL 3649585 (C.D. Cal. June 11, 2015). ..............................................2

*Asahi Metal Indus. Co. v. Sup. Ct.,*
 480 U.S. 102 (1987)...................................................................................20

*Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.,*
 191 F. Supp. 3d 1007 (N.D. Cal. 2016)................................................17, 21

*Autodesk, Inc. v. RK Mace Eng'g, Inc.,*
 2004 WL 603382 (N.D. Cal. Mar. 11, 2004)................................................23

*Brayton Purcell LLP v. Recordon & Recordon,*
 606 F.3d 1124 (9th Cir. 2010)...............................................................16, 19

*Brunston v. Bayer Healthcare Pharm. Inc.,*
 No. CV 13-1904 FMO, Dkt. 45 (C.D. Cal. Apr. 28, 2014)...........................4

*Chunghwa Telecom Global, Inc. v. Medcom, LLC,*
 2013 WL 5688941 (N.D. Cal. Oct. 16, 2013)................................................4

*Craigslist, Inc. v. Hubert,*
 278 F.R.D. 510 (N.D. Cal. 2011). ................................................................2

*Creative Healthcare Sol., Inc. v. Broadreach Med Res., Inc.,*
 2008 WL 11342911 (C.D. Cal. July 28, 2008). ...........................................8

*Cybersell, Inc. v. Cybersell, Inc.,*
 130 F.3d 414 (9th Cir. 1997).....................................................................18

*Davis v. Metro Prods, Inc.,*

    885 F.2d 515 (9th Cir. 1989)......................................................................12

*DFSB Kollective Co. v. Bing Yang,*

    2013 WL 1294641 (N.D. Cal. Mar. 28, 2013)............................................18

*Dimensional Commc'ns, Inc. v. OZ Optics Ltd.,*

    218 F. Supp. 2d 653 (D.N.J. 2002)..............................................................6

*Disney Enter., Inc. v. Fun Vacation Network, LLC,*

    2016 WL 7444860 (C.D. Cal. May 16, 2016)...........................................25

*Dole Food Co. v. Watts,*

    303 F.3d 1104 (9th Cir. 2002)..............................................................21, 23

*Educ. Mgmt. Servs., LLC v. Tracey,*

    102 F. Supp. 3d 906 (W.D. Tex. 2015)........................................................7

*Erwin v. Fin. Life Servs., LLC,*

    2010 WL 11596535 (C.D. Cal. Mar. 30, 2010)..........................................13

*Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.,*

    2006 WL 2015188 (S.D.N.Y. July 13, 2006)...............................................5

*Gurvey v. Legend Films, Inc.,*

    2010 WL 55889 (C.D. Cal. Jan. 4, 2010)....................................................12

*Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,*

    328 F.3d 1122 (9th Cir. 2003).....................................................................24

*HCT Packaging Inc. v. TM Int'l Trading Ltd.,*

    2014 WL 12696776 (C.D. Cal. Mar. 10, 2014)............................................5

*Hinrichsen v. Quality Loan Serv. Corp.,*

    2017 WL 4848920 (S.D. Cal. Aug. 31, 2017)..............................................4

*Ingersoll–Rand Fin. Corp. v. Miller Mining Co.,*

    817 F.2d 1424 (9th Cir. 1987)......................................................................1

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*

    27 F. Supp. 3d 1002 (N.D. Cal. 2014)................................................. 20-21

*In re Miller*,

    262 B.R. 499 (9th Cir. BAP 2001). ...........................................................24

*Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*,

    880 F. Supp. 743 (C.D. Cal. 1995). ..........................................................12

*ITSI T.V. Prods, Inc. v. Agric. Assocs.*,

    3 F.3d 1289 (9th Cir. 1993). ......................................................................24

*ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs*,

    785 F. Supp. 854 (E.D. Cal. 1992). ...........................................................24

*j2 Cloud Servs., Inc. v. Fax87*,

    2017 WL 1535083 (C.D. Cal. Apr. 27, 2017). ....................................15, 17

*Keeton v. Hustler Magazine*,

    465 U.S. 770 (1984). ........................................................................... 12-13

*L&A Designs, LLC v. Xtreme ATVs, Inc.*,

    860 F. Supp. 2d 1196 (D. Or. 2012). .........................................................15

*Lindora, LLC v. Isagenix Int'l, LLC*,

    198 F. Supp. 2d 1127 (S.D. Cal. 2016) ......................................................23

*Love v. Associated Newspapers, Ltd.*,

    611 F.3d 601 (9th Cir. 2010) .........................................................16, 17, 19

*Mavrix Photo, Inc. v. Brand Techs.*,

    647 F.3d 1218 (9th Cir. 2011). ........................................................15-17, 19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,

    243 F. Supp. 2d 1073 (C.D. Cal. 2003). ....................................................19

*Microsoft Corp. v. Very Competitive Computer Prods. Corp.*,

    671 F. Supp. 1250 (N.D. Cal. 1987) .........................................................22

*Mitan v. Feeney*,

    497 F. Supp. 2d 1113 (C.D. Cal. 2007). ....................................................24

*Montana Silversmiths, Inc. v. Taylor Brands, LLC*,

    850 F. Supp. 2d 1172 (D. Mont. 2012)......................................................21

DISH's Opposition to Haseeb
Shah's Motion to Dismiss

*Mysfyt, Inc. v. Lum,*

    2016 WL 6962954 (N.D. Cal. Nov. 29, 2016)..............................................22

*Panavision Int'l, L.P. v. Toeppen,*

    141 F.3d 1316 (9th Cir. 1998).....................................................................22

*Portrait Displays, Inc. v. Speece,*

    2004 WL 1964506 (N.D. Cal. Sept. 3, 2004). .............................................20

*Quokka Sports, Inc. v. Cup Int'l Ltd.,*

    99 F. Supp. 2d 1105 (N.D. Cal. 1999)..........................................................19

*Real Action Paintball, Inc. v. Advanced Tactical Ordinance Sys., LLC,*

    2014 WL 5829374 (N.D. Cal. Nov. 10, 2014)..............................................13

*Richmond Techs., Inc. v. Aumtech Bus. Sols.,*

    2011 WL 2607158 (N.D. Cal. July 1, 2011)....................................................6

*Rio Props., Inc. v. Rio Int'l Interlink,*

    284 F.3d 1007 (9th Cir. 2002).....................................................................16

*Rocke v. Can. Auto. Sport Club,*

    660 F.2d 395 (9th Cir. 1981)........................................................................22

*Rosen v. Netsaits,*

    294 F.R.D. 524 (C.D. Cal. 2013). ..................................................................5

*Rosenberg v. Lashkar-e-Taiba,*

    2014 WL 12834840 (E.D.N.Y. Aug. 1, 2014).............................................5-6

*Schwarzenegger v. Fred Martin Motor Co.,*

    374 F.3d 797 (9th Cir. 2004)........................................................................16

*SEC v. Internet Sols. for Bus. Inc.,*

    509 F.3d 1161 (9th Cir. 2007)........................................................................2

*Shuffle Master, Inc. v. Kardwell Int'l, Inc.,*

    2013 WL 12126745 (C.D. Cal. Apr. 23 2013). ...........................................18

*Sinatra v. Nat'l Enquirer, Inc.,*

    854 F.2d 1191 (9th Cir. 1988)................................................................. 19-20

vii

*Subafilms, Ltd. V. MGM-Pathe Commc'ns Co.,*

    24 F.3d 1088 (9th Cir. 1994)......................................................................24

*Taylor v. Universal Music Corp.,*

    2013 WL 12136369 (C.D. Cal. Mar. 19, 2013)...........................................8

*TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.,*

    961 F. Supp. 686 (D. Del. 1997)..................................................................7

*Tuazon v. R.J. Reynolds Tobacco Co.,*

    433 F.3d 1163 (9th Cir. 2006).....................................................................20

*United Food & Commercial Workers Union v. Alpha Beta Co.,*

    736 F.2d 1371 (9th Cir. 1984)......................................................................2

*USHA Holdings, LLC v. Franchise India Holdings Ltd.,*

    11 F. Supp. 3d 244 (E.D.N.Y. 2014)..........................................................21

*Viewsonic Corp. v. Electrograph Sys., Inc.,*

    2010 WL 11506594 (C.D. Cal. July 8, 2010).............................................17

*Wash. Shoe Co. v. A-Z Sporting Goods, Inc.,*

    704 F.3d 668 (9th Cir. 2012).......................................................................17

*Water Splash, Inc. v. Menon,*

    137 S. Ct. 1504 (2017)..................................................................................5

*Water Wheel Camp Recreational Area, Inc. v. LaRance,*

    642 F.3d 802 (9th Cir. 2011).......................................................................13

*Wheel-Source, Inc. v. Gullekson,*

    2013 WL 944430 (N.D. Tex. Mar. 12, 2013)...............................................7

*Wolf Designs, Inc. v. DHR Co.,*

    322 F. Supp. 2d 1065 (C.D. Cal. 2004)......................................................13

*Wyatt Tech. Corp. v. Smithson,*

    2005 WL 6132329 (C.D. Cal. Aug. 30, 200)..............................................12

**<u>Rules</u>**

Fed. R. Civ. P. 4(f)............................................................................................5

Fed. R. Civ. P. 4(f)(1) ........................................................................ 5-6

Fed. R. Civ. P. 4(f)(3) ..........................................................................6

Fed. R. Civ. P. 4(k)(2) .........................................................................19

Fed. R. Civ. P. 12(b)(2) .......................................................................16

11 U.S.C § 362(a)

Plaintiff DISH Network L.L.C. ("DISH") respectfully submits this response in opposition to Defendant Haseeb Shah's ("Shah") motion to dismiss for improper service and lack of personal jurisdiction.[1] (Dkt. 74, the "Motion".)

## I.   INTRODUCTION

The issues before the Court are: (1) whether Shah, who has received the summons and complaint (collectively "Complaint") no less than four times and most recently with personal service by two attorneys in Pakistan, has been properly served, and (2) whether Shah, who Shah and his codefendants Sajid Sohail and JadooTV (collectively "JadooTV" and collectively with Shah, "Defendants") acknowledge was in charge of transmitting television content to Jadoo users in the United States and California ("Jadoo Users"), is subject to personal jurisdiction. Under well-settled law, Shah was properly served and he is subject to jurisdiction in California.

Shah was properly served under Fed. R. Civ. P. 4 and the Hague Service Convention because he was personally served, such service is permitted by the Convention, and Pakistan has not objected to personal service on its nationals. Likewise, Shah is subject to personal jurisdiction because the fiduciary shield doctrine does not apply since Shah was an independent contractor or was acting in his individual capacity. Even if the doctrine does apply, Shah's actions fall within the "primary participant" exception because he was in charge of transmitting content to Jadoo Users. Shah is liable with JadooTV for direct copyright infringement because as JadooTV's agent, and with his own name, aliases, and IP addresses, he controlled and managed the Internet domains and computer servers used to transmit content

---

[1] Shah is a non-bankrupt defendant unshielded by the automatic stay created by Jadoo TV, Inc.'s bankruptcy filing on May 31, 2019. *See Ingersoll–Rand Fin. Corp. v. Miller Mining Co.,* 817 F.2d 1424, 1427 (9th Cir. 1987) ("In the absence of special circumstances, stays pursuant to section 362(a) are limited to debtors and do not include non-bankrupt co-defendants."). DISH seeks no relief from JadooTV in this response, and does not file this as a continuation of litigation against debtor JadooTV, but rather solely as a response to non-bankrupt defendant Shah's Motion in order to maintain the status quo.

exclusively licensed to DISH in the United States ("Protected Content") to Jadoo Users.

## II.   ARGUMENT & AUTHORITIES

### A.   Shah Has Been Served in Accordance with Rule 4 and The Hague Service Convention.

#### 1.   DISH's Service on Shah is Presumed Valid and all Factual Disputes are Properly Resolved in DISH's Favor.

Although the burden is on the party effecting service to demonstrate that service complied with Rule 4, "Rule 4 is a flexible rule that should be liberally construed so long as the party receives sufficient notice of the complaint." *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *SEC v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1166 (9th Cir. 2007) (internal quotations omitted). Thus, "self-serving declarations by defendants or interested parties are generally insufficient to rebut the presumption of valid service." *Andrews v. All Green Carpet & Floor Cleaning Serv.*, No. 5:14-CV-00159-ODW(EX), 2015 WL 3649585, at *2 (C.D. Cal. June 11, 2015); *Craigslist, Inc. v. Hubert*, 278 F.R.D. 510, 513 (N.D. Cal. 2011) ("Accordingly, where a plaintiff has filed a signed return of service, courts regularly find that a self-serving declaration that a person was not served is insufficient to overcome this prima facie evidence of valid service."). Shah's declaration, which contains self-serving, unsupported claims, cannot overcome the presumption of valid service.[2]

#### 2.   Shah was Personally Served by Two Pakistani Attorneys After He Evaded Service for Months.

On April 19, 2019, two associates of a law firm in Pakistan personally served Shah with the Complaint, and a sworn affidavit was filed attesting thereto, resulting

---

[2] Contrary to Shah's claim, he did advertise for JadooTV as shown by his Flickr account. (Dkt. 74-1, Shah Decl. ¶ 34; Ferguson Decl. ¶ 19, Exs. 22-23.)

**DISH's Opposition to Haseeb**
**Shah's Motion to Dismiss**

in the presumption of valid service. (Dkt. 66, Aff. of Serv.; Ferguson Decl. ¶ 2, Ex. 1.) The law firm was informed of Shah's claim he had not been served, and unequivocally confirmed personal service by two associates provided a photo of Shah before service.  (Ferguson Decl. ¶ 2, Exs. 1-2.) DISH also received and reviewed the process server's original affidavit containing original signatures and acknowledgments, and there do not appear to be any irregularities.  (*Id.* ¶ 3, Ex. 3.) This service followed months of a coordinated attempt to thwart DISH's diligent efforts to have Shah served. Shah has been on notice of this suit since at least February 2019 – but more likely earlier than that based on his close relationship with codefendant JadooTV– and has received the Complaint at least four times.[3]

On February 12, 2019, DISH's first process server delivered the Complaint to Shah during an in-person meeting with him and Shah's attorney in Pakistan. (*Id.* ¶ 4, Ex. 4 ¶¶ 16, 19-20, 28.)  That same day, DISH delivered the Complaint to Shah at his acknowledged email address. (*Id.* ¶ 5, Ex. 5; *see* Dkt. 74-1 ¶ 13 [confirming his email address].) DISH's first process server also delivered the Complaint to Shah through Shah's agent at Shah's business address on March 23, 2019.  (Ferguson Decl. ¶ 4, Ex. 4 ¶¶ 23, 26, 28.) And the Complaint was delivered to Shah a fourth time on April 19, 2019 by two associates of a Pakistani law firm that personally served Shah at his residence. (*Id.* ¶¶ 2-3, Exs. 1-3; Dkt. 66.) Despite these facts, Shah claims he has never been served or presented with documents in this case. (Dkt. 74-1 ¶ 4.)

DISH also attempted to have Shah served through counsel in California since January 2019. On January 28, 2019, DISH requested that JadooTV's counsel (now Shah's counsel) accept service for Shah or provide a current address for him. (Ferguson Decl. ¶ 6, Ex. 6.) But counsel refused both requests. (*Id.* ¶ 6, Ex. 7.) So DISH served requests for production on JadooTV seeking information about Shah's whereabouts. (*Id.* ¶ 7, Exs. 8-9.) Yet JadooTV informed Magistrate Judge Stevenson

---

[3] Shah deleted his Google account with email *pmay360@gmail.com* the day after this lawsuit was filed. (Ferguson Decl. ¶ 17 (b), Ex. 19; Duval Decl. ¶¶ 11-12.)

they "do not intend to search for or produce *any* documents" and DISH's motion to compel JadooTV's production is pending but stayed. (Dkts. 69, 75.)  Finally, twice on May 10, 2019, to put Shah's service denials to rest, DISH again asked Defendants' counsel to accept service for Shah. (Ferguson Decl. ¶ 8, Ex. 10 at 5, 7.)   But Defendants' counsel again refused to cooperate, instead filing this motion challenging service. (*Id.*, Ex. 10 at 6.) Such evasive and uncooperative tactics by Shah and Defendants' counsel should be disfavored and require that the costs of service be shifted to them. *See Brunston v. Bayer Healthcare Pharm. Inc.*, No. CV 13-1904 FMO (DTBx), Dkt. 45 at 3 (C.D. Cal. Apr. 28, 2014) (Olguin, J.) ("[G]iven that [foreign defendant] and the U.S.-based [defendants] are represented by the same attorneys . . . , the court is troubled by [foreign defendant's] unwillingness to accept service. Any efforts by [foreign defendant] to evade service may result in sanctions and/or the costs of service being shifted among the parties.").

Shah submitted a carefully worded, self-serving declaration denying he was served, with no corroborating evidence from unbiased witnesses. Shah has failed to rebut the presumption of valid service stemming from the affidavit of service. The Court should resolve this dispute in DISH's favor and find that Shah has been personally served. *See Hinrichsen v. Quality Loan Serv. Corp.*, No. 16CV0690 DMS (BLM), 2017 WL 4848920, at *2 (S.D. Cal. Aug. 31, 2017) (denying motion to quash "where there was no apparent reason why [process server] would fabricate the encounter" and no evidence was presented "tending to show [process server] would jeopardize his career by submitting a false affidavit to the Court," despite fact party contesting service had offered declarations from himself and family members denying service); *Chunghwa Telecom Global, Inc. v. Medcom, LLC*, No. 5:13-CV-02104 HRL, 2013 WL 5688941, at *5 (N.D. Cal. Oct. 16, 2013) (denying motion to dismiss and resolving factual conflict for plaintiff where "defendants clearly received notice of these proceedings and copies of the complaint and have proceeded to defend the action").

**DISH's Opposition to Haseeb
Shah's Motion to Dismiss**

### 3.    Service Was Proper Under Rule 4 and The Hague Service Convention.

Personal service in Pakistan by private process server is a valid method of service under Rule 4 and the Hague Service Convention. *Rosenberg v. Lashkar-e-Taiba*, No. 1:12-CV-05816 (DLI), 2014 WL 12834840, at *9 (E.D.N.Y. Aug. 1, 2014). But Shah claims that even if he was personally served, such service would be improper because he may <u>only</u> be served through the Pakistani Central Authority. (Dkt. 74 at 14.)[4] Shah relies on a single case – *Gateway Overseas, Inc. v. Nishat (Chunian) Ltd.*, No. 05 CV 4260(GBD), 2006 WL 2015188, at *3 (S.D.N.Y. July 13, 2006). However, neither Rule 4 nor the Hague Service Convention requires service through a state's Central Authority.

Rule 4(f) provides that a person may be served in a foreign country under the Hague Service Convention. Fed. R. Civ. P. 4(f)(1). Article 2 of the Hague Service Convention establishes the creation of – but does <u>not require</u> service to be effected through – a state's Central Authority. *See, e.g., Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) ("Submitting a request to a central authority is not, however, the only method of service approved by the Convention. Articles 10(b) and 10(c), by their plain terms, address additional methods of service that are permitted by the Convention (unless the receiving state objects).").

"Article 10(b) of the Hague Convention allows for personal service unless the State of destination objects." *HCT Packaging Inc. v. TM Int'l Trading Ltd.*, No. CV 13-08443 RGK (SHx), 2014 WL 12696776, at *6 (C.D. Cal. Mar. 10, 2014). Likewise, "Article 10(c)…permits personal service to be effected by judicial officers, officials or other competent persons." *Rosen v. Netsaits*, 294 F.R.D. 524, 528-29 (C.D. Cal. 2013); *see Rosenberg*, 2014 WL 12834840 at *9 ("Finally, the Hague Convention states that, subject to the objection of a signatory state, the Convention

---

[4] DISH sent a request for service and copy of the Complaint to the Pakistan Central Authority on March 27, 2019, but that service is outstanding. (Ferguson Decl. ¶ 9.)

DISH's Opposition to Haseeb
Shah's Motion to Dismiss

is not intended to…inhibit the freedom of judicial officers or officials, or persons interested in a judicial proceeding to effect service directly through a judicial officer, official, or other competent person in the foreign jurisdiction.").

Pakistan has not objected to Hague Service Convention Articles 10(b) or 10(c).[5] Personal service on a defendant residing in Pakistan is therefore proper service. *See Rosenberg*, 2014 WL 12834840, at *9 ("Pakistan…did not object to service…directly through the judicial officers of Pakistan."). Personal service has also been held to be Hague-compliant in other signatory states. *See Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 660 (D.N.J. 2002) ("This Court notes that numerous courts have found personal service by a process server under Articles 10(b) and (c) to be valid in other States.").

The affidavit of service shows that DISH's process servers – licensed judicial officers in Pakistan – were familiar with the "requirements for service" under Pakistani law, that personal service is a proper means of effecting service, and that Shah was personally served. (Dkt. 66 ¶¶ 3-4; Ferguson Decl. ¶¶ 2-3, Exs. 1-3.)). Shah has been served under Rule 4(f)(1) and the Hague Service Convention.[6]

**B.    Shah is Subject to Personal Jurisdiction in This Court.**

The thrust of Shah's Motion is that his contacts with the United States and California must be ignored under the fiduciary shield doctrine because he was providing services to JadooTV as an agent of IDC Resources ("IDC"). (Dkt. 74-1 ¶¶ 23-24.) This argument fails for three reasons. First, the fiduciary shield doctrine does not apply to independent contractors. Second, Shah's actions directed at the forum were undertaken not solely in his corporate capacity. Third, as a primary participant

---

[5]    *See* HCCH, Pakistan – Central Authority & Practical Information, *https://www.hcch.net/en/states/authorities/details3/?aid=288*.

[6] The Court also has discretion to permit service through Shah's local counsel. *See, e.g., Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) ("Service upon a foreign defendant's United States-based counsel is a common form of service ordered under Rule 4(f)(3).").

in distributing JadooTV's infringing television service, Shah is subject to jurisdiction notwithstanding IDC's fiduciary shield.

### 1.   The Fiduciary Shield Doctrine Does Not Extend to Independent Contractors.

The fiduciary shield doctrine does not apply to independent contractors. *See Educ. Mgmt. Servs., LLC v. Tracey*, 102 F. Supp. 3d 906, 911-12 (W.D. Tex. 2015) ("Although defense counsel expressed his belief at oral argument that the fiduciary shield doctrine applies equally to independent contractors, the Court can find no authority to support this position."); *Wheel-Source, Inc. v. Gullekson*, No. 3:12-cv-1500-M, 2013 WL 944430, at *8 n.3 (N.D. Tex. Mar. 12, 2013) (concluding that the fiduciary shield doctrine does not apply to independent contractors); *see also TriStrata Tech., Inc. v. Neoteric Cosmetics, Inc.*, 961 F. Supp. 686, 690 (D. Del. 1997) ("The purpose of the fiduciary shield doctrine is to prohibit acts performed by an individual in the individual's capacity as a corporate *employee* from serving as the basis for personal jurisdiction over the individual.") (emphasis added).

Shah admits that during the relevant timeframe, he was not a JadooTV employee and that all services he provided for JadooTV were through his work for IDC. (Dkt. 74-1 ¶¶ 22-24.) Shah also admits that during this timeframe he was not *always* an "employee" of IDC but a "consultant." (*Id.* ¶ 3.) Yet Shah's declaration fails to distinguish between the actions he undertook for JadooTV as an employee of IDC and those he undertook as a consultant. Shah fails to describe with specificity the extent of his authority at IDC vis-à-vis JadooTV. Shah even fails to identify his superiors at IDC; to say whether or by whom he was directed to work for JadooTV or whether Shah on his own took the initiative; or whether IDC ever actually contracted with JadooTV. (*Id.* ¶ 24.) Shah's basis for seeking immunity under the fiduciary shield doctrine stems from the single conclusory allegation repeated in his declaration— "all services I have provided to Jadoo TV, or related to Jadoo TV, have been through my work for IDC." (*Id.* ¶¶ 23, 33.) To the extent Shah was acting not

as an employee but an independent contractor for IDC, he is not entitled to fiduciary shield protection, and to the extent he seeks protection as an employee thereof, his testimony fails to establish an adequate basis for such protection. *See Taylor v. Universal Music Corp.*, No. 12-07507-RGK (AJWx), 2013 WL 12136369, at *4 (C.D. Cal. Mar. 19, 2013) ("Such conclusory allegations fail to establish any of the elements of agency.") (citation omitted).

### 2.   Shah's Actions Were Not Undertaken in a Corporate Capacity.

The fiduciary shield doctrine also does not apply to Shah because to have such protection he must demonstrate that all of his actions undertaken in targeting the forum "were carried out solely in a corporate rather than an individual capacity." *Creative Healthcare Sol., Inc. v. Broadreach Med Res., Inc.*, No. CV 08-1789-GW (CAx), 2008 WL 11342911, at *5 (C.D. Cal. July 28, 2008); *see Allstar Mktg. Grp., LLC v. YourStore Online, LLC*, 666 F. Supp. 2d 1109, 1119 (C.D. Cal. 2009) ("The fiduciary shield doctrine protects individuals from being subjected to jurisdiction solely on the basis of their employer's minimum contacts…."). Actions undertaken in one's individual capacity are therefore not entitled to fiduciary shield protection.

To understand Shah's personal involvement in JadooTV's infringing activity, it is necessary to consider the business of JadooTV. JadooTV distributes and promotes Jadoo branded set-top boxes for its customers to use to receive JadooTV's television service. (Dkt. 1 ¶ 21). The Protected Content was among the content distributed on JadooTV's television service in the United States. (*See id*. ¶¶ 16-19, Exs. 1-2; Duval Decl. ¶¶ 5-7, 9, Exs. 1-2.) JadooTV is headquartered in California and a significant portion of its business is conducted in California and the United States.[7]

---

[7] *See* JadooTV Inc., *Sajid Sohail – CEO at JadooTV | Exclusive Interview HumWatan News*, YouTube (Jan. 23, 2018), https://www.youtube.com/watch?v=eQJuLkYq0i8 (JadooTV CEO Sohail stating the "US is 50% of Jadoo sales"); (Ferguson Decl. ¶ 10, Ex. 11.)

8

Shah exercised control over JadooTV's transmissions of copyrighted programs from the Protected Content, not as an agent of IDC, but in his personal capacity. This exercise of authority is shown through Shah's personal control and management, with his own name, aliases, and IP addresses, over domain names and computer servers used to transmit the Protected Content to Jadoo Users.

a)    **Shah Controlled the Domain and Computer Server Used to Transmit Protected Content.**

"The service provider of the computer servers hosting infringing Jadoo VOD content identified its customer's name and email address, which upon investigation were linked to Shah." (Dkt. 1 ¶ 50.) The betacdnzone.com domain and a Verizon computer server were used to transmit Protected Content to Jadoo Users via the VOD section of the Jadoo service. (Duval Decl. ¶¶ 6, 10, Exs. 2, 5; Ferguson Decl. ¶ 12, Ex. 14; *see* Dkt. 1 ¶¶ 48-50.) The domain and computer server were registered in the name of Peter May and email address *pmay360@gmail.com*. (Duval Decl. ¶¶ 10-11, Exs. 5-6; Ferguson Decl. ¶¶ 12-13, Exs. 14-15 at Dynamic Network Services ("DynDNS") 0037-0038.) Shah used the alias Peter May to conceal his control and management of the domain and computer server used to transmit VOD content that aired on the Protected Content to Jadoo Users. (Duval Decl. ¶¶ 12-13; Ferguson Decl. ¶ 23(a-c, e-f, k-l).)

b)    **Shah Controlled the Domain and Computer Servers Used to Transmit Channels Airing Protected Content.**

JadooTV provided Jadoo Users with access to channels airing the Protected Content through JadooTV's eMedia menu.  (Dkt. 1 ¶ 26.)  The email address *ali85one@gmail.com* was used to control the domains and computer servers used to transmit the channels airing the Protected Content to Jadoo Users via the eMedia South Asian Super Pack ("SASP") section of the Jadoo service. (Duval Decl. ¶ 7, Ex. 3; Ferguson Decl. ¶¶ 14, 21, Exs. 16, 26.)

Shah's use of *ali85one@gmail.com,* Peter May, and *pmay360@gmail.com* is shown by comparing the IP addresses used to access these accounts with IP addresses used to access Shah's known service provider accounts. Shah registered Facebook, Google, PayPal, Twitter, Flickr, and DynDNS accounts using his name and email address *haseeb110@gmail.com* (the "Shah Accounts"). (Ferguson Decl. ¶¶ 13, 16-19, 22, Exs. 15, 18-19, 21-22, 27; *see* Dkt. 74-1 ¶ 13 [confirming email address].) IP addresses used to access the Shah Accounts also accessed Google, DynDNS, and INXY accounts using *ali85one@gmail.com* (the "Ali85one Accounts"). (Ferguson Decl. ¶ 23 (a-g, j).) Likewise, IP addresses used to access the Shah Accounts also accessed DynDNS and PayPal accounts using Peter May and *pmay360@gmail.com* (the "Peter May Accounts"). (*Id.* ¶ 23(a-c, e-f, k-l).)

That ali85one and Peter May are Shah's aliases is also established through invoices about the domains used to transmit the channels airing the Protected Content, showing that the same IP address in Pakistan was used to access each of the pmay360, ali85one, and haseeb110 DynDNS accounts. (*Id.* ¶ 13, Ex. 15.) Shah used his ali85one DynDNS account to register seethen.net. (*See id.* ¶ 13, Ex. 15 at DynDNS 0064-0065 [completed 13 minutes after Shah's unsuccessful attempt to transfer tlismoo.com to his ali85one account].) Shortly thereafter, seethen.net was used with computer servers to transmit the channels airing the Protected Content to Jadoo Users through the eMedia SASP section of the JadooTV service. (Duval Decl. ¶ 7, Ex. 3.)

Perhaps most telling is these IP addresses that accessed the Shah Accounts, Ali85one Accounts, and Peter May Accounts also accessed the JadooTV PayPal account 383 times and accounted for 112 transactions totaling more than $50,500. (Ferguson Decl. ¶¶ 23-24, Ex. 28.) The payments made by the user of these IP addresses were primarily to content delivery networks ("CDNs") OVH and FDCServers, which follows the admitted responsibilities of Shah to manage JadooTV's use of CDNs. (*Id.* ¶ 24, Ex. 28; Dkt. 74 at 12:10-12.)

Shah used *ali85one@gmail.com* to contract for computer servers with Verizon and Highwinds that were used to transmit the channels airing the Protected Content to Jadoo Users. During 21 months, Shah received invoices totaling $242,922.30 for his extensive use of these computer servers. (Ferguson Decl. ¶ 14(a), Ex. 16.) Shah received at least six notices of infringement demanding the removal of the channels airing the Protected Content from his servers. (*Id*. ¶¶ 14(b), 21(c), Exs. 16, 26.) The near quarter million dollars in bandwidth charges for these computer servers establishes that Shah, likely with JadooTV's financial backing, provided tens of thousands of Jadoo Users with the channels airing the Protected Content in violation of DISH's rights.[8]

### c) Shah Provided GitHub Files that Added eMedia SASP and VOD to Jadoo Boxes.

JadooTV's eMedia app has a built in capability to search GitHub for files, including files that added eMedia SASP and VOD, including Protected Content and channels airing the Protected Content, to Jadoo set-top boxes. (Dkt. 1 ¶ 35.) Shah used GitHub accounts to provide GitHub files that added eMedia SASP and VOD to Jadoo set-top boxes.  (Ferguson Decl. ¶¶ 20, 23(b, i, o), Exs. 24-25.)

### d) Shah Provided a YouTube Video that Shows Jadoo Users how to Locate and Install eMedia SASP.

JadooTV instructed Jadoo Users on how to add eMedia SASP, including channels airing the Protected Content, by telling them how to search YouTube for instructional videos.  (Dkt. 1 ¶¶ 39-40.)  Shah used a Google account to provide a YouTube Video that shows Jadoo Users how to locate and install eMedia SASP to Jadoo set-top boxes.  (Ferguson Decl. ¶¶ 17(c), 23(o), Exs. 19-20.)

Shah's control over these domains, computer servers, and accounts was in his individual capacity. The accounts were in his own name or aliases. Shah used his personal email address or corresponding alias email addresses to register them. And

---

[8] Shah admits that Sohail is paying his legal fees for this Motion.  (Dkt. 74-1 ¶ 39.)

DISH's Opposition to Haseeb
Shah's Motion to Dismiss

Shah took efforts to conceal his identity while he could have done so simply by using IDC and an IDC email address. Therefore, Shah is not entitled to fiduciary shield protection. *See Gurvey v. Legend Films, Inc.*, No. 09-CV-942-IEG (JMA), 2010 WL 55889, at *10 (C.D. Cal. Jan. 4, 2010) (exercising jurisdiction where some of defendants' contacts were in their "individual capacities" and others were "on behalf of the LLC").

### 3.   Shah's Activities are Within the "Primary Participant" Exception to the Fiduciary Shield Doctrine.

If the fiduciary shield doctrine does apply, Shah's actions are within the "primary participant" exception. "Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum is not sufficient in itself to permit that forum to assert jurisdiction…." *Davis v. Metro Prods, Inc.*, 885 F.2d 515, 514 (9th Cir. 1989)). However, "[t]he doctrine does not give automatic jurisdictional immunity to corporate agents." *Wyatt Tech. Corp. v. Smithson*, No. 05-1309 WMB (RZx), 2005 WL 6132329, at *6 (C.D. Cal. Aug. 30, 2005) (quoting *Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743, 750 (C.D. Cal. 1995)) (internal quotations omitted) (citing *Keeton v. Hustler Magazine,* 465 U.S. 770, 787 (1984); *see Allstar Mktg. Grp.,* 666 F. Supp. 2d at 1120 ("[T]he mere fact that defendants took actions constituting sufficient contacts with the state on behalf of a corporate employer, however, will not shield the individuals from being subjected to jurisdiction."). Rather, the fiduciary shield doctrine "merely requires that the Court consider the extent to which the corporate agent purposefully directed his own activities at the forum state." *Wyatt*, 2005 WL 6132329, at *6.

"Therefore, if the agent is a primary participant in the alleged wrongdoing intentionally directed at California, or actively and personally involved in the conduct giving rise to the claim, he may be subject to jurisdiction…." *Allstar Mktg. Grp.*, 666 F. Supp. 2d at 1120. "Indeed, a number of Ninth Circuit district courts have…exercise[d] personal jurisdiction over individuals acting only in their official

capacities….” *Erwin v. Fin. Life Servs., LLC*, No. SACV 09-1463 DOC (MLGx), 2010 WL 11596535, at *6 (C.D. Cal. Mar. 30, 2010) (collecting cases); *see Real Action Paintball, Inc. v. Advanced Tactical Ordinance Sys., LLC,* No. 14-CV-02435-MEJ, 2014 WL 5829374, at *3 (N.D. Cal. Nov. 10, 2014) (finding that the fiduciary shield doctrine does not prevent a court from exercising jurisdiction over defendants merely because their acts “were undertaken in an official, business capacity”).

An individual may be subject to personal jurisdiction – notwithstanding that his actions were undertaken as a corporate agent – where, as here, the individual was “directly involved in the alleged infringing activity.” *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004). Shah’s contention he may have immunity from this Court merely because he was acting as an agent for IDC therefore contradicts the way the fiduciary shield doctrine has been applied in this Circuit and must be rejected. *See Water Wheel Camp Recreational Area, Inc. v. LaRance*, 642 F.3d 802, 819 (9th Cir. 2011) (“We today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity.” (quoting *Keeton*, 465 U.S. at 781 n.13)). Because Shah was directly involved in and even exercised control over activity directed into the United States and California, he is subject to personal jurisdiction.

Shah was the “primary participant” in directing the Jadoo service into the United States and California. This is apparent through Shah’s (1) control of computer servers and domains used to transmit DISH’s copyrighted works to Jadoo Users and (2) control over JadooTV financial accounts.

First, Shah was in control over computer servers and domains used to transmit DISH’s copyrighted works to Jadoo Users. (*See supra* Sections II.B.2.a-b.) Shah’s direct participation in the content distribution aspect of JadooTV’s business is

supported also by Shah and JadooTV's own admissions.[9] Shah even admitted that the servers he managed "did store some…content…." (Dkt. 74 at 19:20-22.) Shah is subject to jurisdiction in this Court notwithstanding the fiduciary shield because he was the primary participant in directing infringing content into the United States and California. *See Adobe Sys. Inc. v. Accoladian Res., LLC,* No. C 13-00388 WHA, 2014 WL 3737979, at *5 (N.D. Cal. July 28, 2014) (exercising jurisdiction over corporate agent where it was shown that he was listed as the registered contact for a domain name involved in infringing activity).

Second, Shah exercised control over JadooTV's financial accounts. Shah had the authority to view and transfer money from JadooTV's PayPal account. (Ferguson Decl. ¶ 22, Ex. 27.) DISH served a subpoena on PayPal about accounts associated with Shah or his email addresses. (*Id*. ¶ 11.) In response, PayPal produced Sohail's JadooTV account records, identifying Shah as a user on the account with privileges including "Mass Pay, Recurring Payment, Send Money, [and] View Balance." (*Id*. Ex. 27 at PayPal 0008.) The PayPal records list Shah's address as in Pleasanton, California. (*Id*. Ex. 27 at PayPal 0006, 0009-0010.) Shah accessed the JadooTV PayPal account at least 383 times and completed at least 112 transactions totaling more than $50,500. (*Id.* ¶¶ 23-24, Ex. 28; *see* Dkt. 74 at 12:10-12.)

Shah's role at JadooTV therefore goes far beyond Shah's claims in his Motion that any work he did for JadooTV was through IDC. Shah individually had privileges

---

[9] *See* Ferguson Decl. ¶ 25, Ex. 29 at 2:3-4, JadooTV's Initial Disclosures (identifying Shah for "The hosting and transmission of TV content, accessible on Jadoo4, Jadoo5, and Jadoo5S"); Dkt. 74 at 12:10-12 ("The primary services that Mr. Shah provides to Jadoo TV are managing network operations, including managing Jadoo TV's use of content delivery networks ("CDNs")."); Ferguson Decl. ¶ 26, Ex. 30 at 19, Interrog. 15 ("JadooTV has engaged Mr. Shah to provide management services for JadooTV's Network Operations Center…. Such services included, but were not limited to, facilitating license agreements between JadooTV and certain content providers…, and monitoring any technical issues with JadooTV's CDNs and media streams providing licensed content.").

14

including making payments, sending money, and viewing the balance of Sohail and JadooTV's PayPal account, which received more than $24 million from their concerted copyright infringement. (Ferguson Decl. ¶ 22, Ex. 27 at PayPal 0008.) Trusted by Sohail, Shah was a key figure at JadooTV.[10] Thus, Shah is rightly subject to personal jurisdiction in this Court. *See, e.g., j2 Cloud Servs, Inc. v. Fax87*, No. 13-05353 DDP (AJWX), 2017 WL 1535083, at *5 (C.D. Cal. Apr. 27, 2017) (finding nonresident corporate agent subject to jurisdiction because "the relevant inquiry is not [defendant's] official title" but rather whether "that [defendant] had a managerial role and was empowered to…build and maintain the websites at issue in this case"); *L&A Designs, LLC v. Xtreme ATVs, Inc.*, 860 F. Supp. 2d 1196, 1202 (D. Or. 2012) (exercising jurisdiction over nonresident that "was a primary participant in the alleged infringement")[11]

### 4. Shah Purposefully Directed Infringing Activity into the United States and California.

Specific personal jurisdiction is established by showing: (1) Shah purposefully directed his activities into the forum; (2) DISH's claims arise out of or relate to these forum-related activities; and (3) the exercise of jurisdiction over Shah is not unreasonable. *See Mavrix Photo, Inc. v. Brand Techs.*, 647 F.3d 1218, 1227-28 (9th Cir. 2011). Only prongs one and three are at issue.[12]

"Purposeful direction" in the copyright infringement context is analyzed under the "effects" test and requires that Shah (1) commit an intentional act, (2) expressly

---

[10] The agency relationship between Sohail, JadooTV, and Shah is also displayed by photos including Sohail and Shah together at conventions, riding in a boat, and eating. (Ferguson Decl. ¶ 15, Ex. 17.)

[11] Communications between Shah and Sohail would likely define further the nature and extent of Shah's role at JadooTV, which is why DISH made efforts to request them from JadooTV during discovery. (Ferguson Decl. ¶ 7, Exs. 8-9.) JadooTV, however, has refused to produce a single document in this case. (Dkts. 69, 75.)

[12] Shah has not contested prong two. (*See* Dkt. 74 at 15-20.) As demonstrated in Sections II.B.1-4, DISH's claims arise from or relate to Shah's forum-related activity.

aimed at the forum state, and (3) causing harm he knows is likely to be suffered in the forum state. *Id.* at 1227-28. Shah claims that DISH has failed to satisfy all three prongs, but provides no discussion as to prong three. (Dkt. 75 at 18). DISH's allegations, which are supported by unbiased third-party business records and Shah and his codefendants' own admissions, satisfy all three "effects" test prongs.

In opposing Shah's Motion under Rule 12(b)(2), DISH "need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Uncontroverted allegations in DISH's complaint must be taken as true. *Id.* And any conflicts between Shah's and DISH's declarations must be resolved in DISH's favor. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). For the reasons discussed above and further below, Shah purposefully directed infringing activities into the forum sufficient to satisfy each prong of the "effects" test.

**a)      Shah Committed an Intentional Act.**

The "intentional act" requirement is satisfied so long as the defendant commits an "actual, physical act in the real world." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). There is no requirement that the defendant "inten[d] to accomplish a result or consequence of that act[,]" *i.e.* that he intend to commit infringement. *Id.*; *see Schwarzenegger*, 374 F.3d at 803 (placing a newspaper advertisement an intentional act).

Shah engaged in intentional acts, including his control over domains and computer servers from which infringing content was transmitted to Jadoo Users; control of GitHub accounts used to provide computer files to Jadoo Users to add channels airing the Protected Content; and control of a YouTube account from which a video was posted instructing Jadoo Users how to add channels airing the Protected Content. (*See supra* Sections II.B.2-3.)  Prong one is satisfied. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (operating a passive website held to be an intentional act).

### b) Shah's Actions Were Expressly Aimed at California, or Alternatively, the United States as a Whole.

"[W]here a defendant *knows*—as opposed to being able to foresee—that an intentional act will impact another state, then the 'expressly aimed' requirement is satisfied." *Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd.*, 191 F. Supp. 3d 1007, 1016 (N.D. Cal. 2016) (quoting *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675 (9th Cir. 2012)) (emphasis in original) (internal quotations omitted). "Particularly relevant here, the Ninth Circuit has further explained that the 'expressly aimed' prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property…for the purpose of competing with the plaintiff in the forum." *j2 Cloud Servs.*, 2017 WL 1535083, at *6 (quoting *Love*, 611 F.3d at 609 n.4). "An act is expressly aimed at the forum if it has or will have a significant impact upon the plaintiff in that state." *Viewsonic Corp. v. Electrograph Sys., Inc.*, No. CV 09-04093 SJO (JCx), 2010 WL 11506594, at *6 (C.D. Cal. July 8, 2010). "However, while the fact that the plaintiff is a resident of the forum state may be *sufficient* for purposes of specific personal jurisdiction, it is not a *necessary* one." *Mavrix Photo*, 647 F.3d at 1221–22 (emphasis in original). The express aiming prong is satisfied here for two independent reasons: (1) Shah purposefully directed his activities into the forum—the state of California and the whole United States and (2) DISH was harmed there.

First, Shah distributed the Protected Content to Jadoo Users and assisted Jadoo Users to add SASP to eMedia. (*See supra* Sections II.B.2-3.) JadooTV is headquartered in California and a significant portion of its users reside there, including in the Central District. (Dkt. 28, JadooTV's Answer ¶ 7; Ferguson Decl. ¶ 10, Ex. 11 [JadooTV has over 70 Jadoo resellers in California, approximately three-fourths of which are in the Central District].) The domains used to transmit the Protected Content were registered by DynDNS of New Hampshire, to Shah via his Peter May and ali85one aliases. (Duval Decl. ¶¶ 7, 10-12; Ferguson Decl. ¶ 13, Ex.

15.) Some servers Shah used to transmit the Protected Content were in the United States. (Duval Decl. ¶¶ 9-10 [Verizon and Highwinds]; Ferguson Decl. ¶¶ 12, 14 [same].) And GitHub and YouTube, which Shah used to assist Jadoo Users to add SASP to eMedia, are also in the United States, specifically California, a fact courts have found significant to the specific personal jurisdiction equation. (Ferguson Decl. ¶¶ 17(c), 20, 23(b, i, o).) *See DFSB Kollective Co. v. Bing Yang*, No. C 11-1051 CW, 2013 WL 1294641, at *1, 16 (N.D. Cal. Mar. 28, 2013). Shah may not complain that he did not intend for the content he was transmitting *for JadooTV* to reach Jadoo Users in the forum, for that is where those users were located.

Shah attempts to neutralize this straightforward analysis by arguing that the service he was providing to JadooTV and its users equaled a "passive website" without "something more." (Dkt. 74 at 19:24-20:4). But that argument fails because Shah admittedly did not host a website for JadooTV, let alone a passive one. (*Id.* at 19:17-19.) Far from hosting a passive website, Shah knew exactly who his actions were targeting—paying users of JadooTV, a significant number of which were in the forum. Because the service Shah was providing to Jadoo Users was commercial, it satisfies the "express aiming" requirement. *See, e.g., Shuffle Master, Inc. v. Kardwell Int'l, Inc.*, No. 2:12-CV-8271-SVW-RZ, 2013 WL 12126745, at * 4 (C.D. Cal. Apr. 23, 2013) ("Among other things, 'something more' may include conducting commercial activity over the internet with forum residents…or earning income from residents in the forum state" (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997))).

Second, DISH was harmed in the forum. DISH is the fourth-largest pay-television provider in the United States with millions of subscribers nationwide including many in California. (Dkt. 1 ¶ 16.) Some of DISH's customers receive access to DISH's exclusive South Asian television content, some of which was infringed by Shah. (*Id.* ¶¶ 16-19.) The value of DISH's intellectual property has therefore been diminished because of Shah's actions. DISH has suffered a

jurisdictionally significant harm in the forum. *See Love*, 611 F.3d at 609 n.4 (concluding that "express aiming" is satisfied when defendant misuses the plaintiff's intellectual property and competes with plaintiff in the forum).

### c)   Shah Knew that DISH was likely to be Harmed in the United States and California.

The third requirement of the "effects" test is satisfied where, as here, the defendant's infringing actions have "caused harm [he] knows is likely to be suffered in the forum state." *Mavrix Photo*, 647 F.3d at 1231. "[T]his element may be established even if the bulk of the harm occurs outside the forum" and "is satisfied when defendant's intentional act has foreseeable effects in the forum." *Brayton*, 606 F.3d at 1131. Because Shah transmitted content for JadooTV that infringed DISH's copyrights, intended that such content be distributed on Jadoo set-top boxes to Jadoo Users in the forum, and assisted Jadoo Users to receive the Protected Content, Shah may not complain that he did not know the result of his actions would likely be felt in the forum.[13]

### 5.   This Court's Exercise of Personal Jurisdiction over Shah is Reasonable.

Reasonableness is considered a separate factor in the personal jurisdiction equation. *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1198 (9th Cir. 1988). However, after it has been shown, as is the case here, that the defendant purposefully directed activity into the forum, the burden shifts to that party to "present a

---

[13] In the alternative, Shah is subject to jurisdiction in this Court pursuant to Fed. R. Civ. P. 4(k)(2), because DISH's claims against him arise under federal law, Shah has not identified any state with jurisdiction over him, and his contacts with the United States as a whole satisfy due process. (Dkt. 1 ¶ 14). *See Quokka Sports, Inc. v. Cup Int'l Ltd.*, 99 F. Supp. 2d 1105, 1114 (N.D. Cal. 1999) (exercising 4(k)(2) jurisdiction over foreign website operator engaged in trademark infringement); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 243 F. Supp. 2d 1073, 1095 (C.D. Cal. 2003) (concluding that 4(k)(2) jurisdiction over foreign website operator engaged in copyright infringement was appropriate).

**DISH's Opposition to Haseeb Shah's Motion to Dismiss**

compelling case that jurisdiction would be unreasonable." *Id*. The court balances seven factors in determining reasonableness: (1) the extent of purposeful interjection; (2) the burden on the defendant; (3) the extent of conflict with sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the suit; (5) the most efficient judicial resolution of the dispute; (6) the convenience and effectiveness of relief for the plaintiff; and (7) the existence of an alternative forum. *Id.* at 1198-99. In analyzing these factors, four support jurisdiction, two are neutral, and only one weighs against exercising jurisdiction. Shah has not carried his burden to show that requiring him to defend this action is unreasonable.

### a)      Purposeful Interjection

The first factor reanalyzes the purposeful direction test described above. *See id*. at 1199. This factor favors jurisdiction where, as here, it is shown that the defendant directed his activities into the forum. *See Portrait Displays, Inc. v. Speece*, No. C-04-1501 RMW, 2004 WL 1964506, at *7 (N.D. Cal. Sept. 3, 2004) ("The first factor of the scope of defendant's purposeful interjection into the forum state favors jurisdiction because, as described above, [defendant's] alleged wrongful activities were directed at California.").

### b)      Shah's Burden is Not Dispositive

When purposeful direction has been established, as it has here, "often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1176 (9th Cir. 2006) (quoting *Asahi Metal Indus. Co. v. Sup. Ct.*, 480 U.S. 102, 114 (1987)). "[C]ostliness and evidentiary complexity are simply parts of modern, multinational litigation, especially when the claims at issue concern an international…conspiracy." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1013 (N.D. Cal. 2014) (citing *Asahi*, 480 U.S. at 115). Shah claims that on his income, he cannot afford the legal and travel expenses necessary to litigate this case in California. (Dkt. 74 at 21:23-26, 22:3-6.) Yet JadooTV's CEO, co-

defendant Sohail, agreed to pay the costs of this motion, and Sohail has not stated that he is unable or unwilling to continue to pay for Shah's defense. (*Id*. at 21:27-22:14.)

Nor is Shah impoverished. According to one source, his claimed income of $24,000 a year is over thirty-six times that of the average Pakistani household.[14] And his burden is lower still because he can speak, read, and write English. (Dkt. 74 at 22:7-8.) *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1115 (9th Cir. 2002). Shah's alleged financial burden and inconvenience also do not end the analysis, since the defendant's burden is but one of seven factors. *Id*. (recognizing that although it would be "expensive and inconvenient" for individuals residing in Europe to defend themselves in California, "this factor is not dispositive").

Courts routinely reject claims by foreign defendants claiming that it would be too burdensome for them to defend themselves outside their home country, particularly when those defendants "use technology…to carry on the business relationship at issue." *Autodesk*, 191 F. Supp. 3d at 1019. This factor therefore "weighs only slightly in favor of the [defendant], as it probably does in every case." *Montana Silversmiths, Inc. v. Taylor Brands, LLC*, 850 F. Supp. 2d 1172, 1183 (D. Mont. 2012); *see USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 273 (E.D.N.Y. 2014) (finding it not unreasonable for individual domiciled in India to defend against action in New York where they had retained local counsel).

### c)   Conflict in Sovereignty is Minimal

Where, as here, a defendant has engaged in activity directed at the United States, "the narrower jurisdictional basis of specific jurisdiction mitigates that concern [about sovereignty]." *In re Cathode Ray Tube*, 27 F. Supp. 3d at 1014.

---

[14] *See* CEIC, Pakistani Household Income per Capita, https://www.ceicdata.com/en/indicator/pakistan/annual-household-income-per-capita (last visited June 12, 2019).

Likewise, where, as here, the plaintiff's complaint raises only questions of United States law, and alleges no cause of action under the laws of a defendant's state of residence, concerns about conflicts in sovereignty are overblown. *See Mysfyt, Inc. v. Lum*, No. 4:16-CV-03813-KAW, 2016 WL 6962954, at *6 (N.D. Cal. Nov. 29, 2016). This factor is neutral.

### d)      California and the United States Have a Strong Interest in Adjudicating this Suit

Shah violated federal copyright statutes and United States Courts have a strong interest in adjudicating such claims.  *See Microsoft Corp. v. Very Competitive Computer Prods. Corp.*, 671 F. Supp. 1250, 1256 (N.D. Cal. 1987) ("[T]here is a strong interest in the policies of the federal copyright statutes that will be furthered by adjudicating the case in this forum, as opposed to Taiwan."). DISH has a significant subscriber base in the forum, and Shah's codefendants – with whom he conspired to infringe DISH's copyrights – all reside in California. Thus, federal courts in California have a strong interest in hearing this case. *See Mysfyt*, 2016 WL 6962954, at *6 ("California has a strong interest in discouraging infringement injuries that occur within the state."). This factor therefore supports reasonableness.

### e)      Most Efficient Judicial Resolution of the Dispute

This factor focuses on the location of evidence and witnesses and is no longer weighed heavily given the modern advances in communication and transportation. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998). This factor also considers the situs of the actions creating liability and the situs of the injury. *Rocke v. Can. Auto. Sport Club*, 660 F.2d 395, 399-400 (9th Cir. 1981). Shah claims it would be "far more efficient to try DISH's claims against Mr. Shah in Pakistan." (Dkt. 74 at 23:14-15.) However, Shah has not identified a single witness by name located in Pakistan. (Dkt. 74-1 ¶ 40.) And his codefendants have identified only one besides Shah. (Ferguson Decl. ¶ 25, Ex. 29 at 2:5.) Shah's codefendants all reside in the forum, and DISH anticipates that several of its witnesses with knowledge of

DISH's Opposition to Haseeb
Shah's Motion to Dismiss

Shah's transmission of the Protected Content on the Jadoo service are employees of JadooTV, or otherwise reside in the forum. (*Id.* ¶ 27, Ex. 31 at 5:4-15.) Shah has not demonstrated that the situs is Pakistan. *See Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 2d 1127, 1150-53 (S.D. Cal. 2016) (denying defendant's motion to dismiss noting that "joinder, rather than severance, best serves judicial economy because there is a substantial overlap of factual and legal issues underlying [plaintiff's] claims"). This factor supports jurisdiction.

### f) Convenience and Effectiveness of Relief for the Plaintiff

Although this factor is not of "paramount importance," *Dole Food Co.*, 303 F.3d at 1116, what little weight it does carry leans for reasonableness. DISH chose this forum, Shah injured DISH in the forum, and therefore requiring DISH to litigate in multiple forums would be highly inconvenient. *See Autodesk, Inc. v. RK Mace Eng'g, Inc.*, No. C-03-5128 VRW, 2004 WL 603382, at *8 (N.D. Cal. Mar. 11, 2004) (finding that in the case of a plaintiff "faced with widespread infringement of its…products, litigating outside California and in all the states in which the alleged infringers live would be highly inconvenient."). Finally, "given the frequency with which California courts are faced with intellectual property claims…California is certainly well-suited to providing plaintiff with appropriate relief for its injuries, should relief be warranted." *Id*.

### g) Existence of an Alternative Forum is Speculative

Shah's argument that Pakistan is an adequate alternative forum is not compelling. (Dkt. 74 at 24:4-11.) DISH has raised no claims under Pakistani law; rather, all claims arise under the United States Copyright Act. (Dkt. 1 ¶ 12.) Shah also has not established that DISH *could* assert its claims for copyright infringement in Pakistan or that a Pakistani court would actually hear such claims. *See AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1241 (N.D. Cal. 2014) (finding this factor supported reasonableness where defendant failed to "establish that [plaintiff] could

assert its claims for U.S. and California trademark infringement in the United Kingdom"). The Copyright Act does not apply to acts of infringement taking place entirely abroad. *Subafilms, Ltd. V. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1094 (9th Cir. 1994). Therefore, if Pakistan limited its own copyright law accordingly, DISH could be left with no remedy against Shah, for the infringement has primarily occurred not in Pakistan but in the United States.

For DISH to have a remedy in a Pakistani court, that court would have to apply United States rather than Pakistani copyright law, which such courts more than likely are not accustomed to doing. United States courts have declined to apply a foreign nation's copyright law when faced with similar circumstances. *See, e.g., ITSI T.V. Prods., Inc. v. Cal. Auth. of Racing Fairs*, 785 F. Supp. 854, 867 (E.D. Cal. 1992), *aff'd in part, rev'd in part sub nom., ITSI T.V. Prods, Inc. v. Agric. Assocs*, 3 F.3d 1289 (9th Cir. 1993). DISH would be denied its right to a remedy against Shah if a Pakistani court did the same. This factor is neutral.

## C. Dismissal is Unwarranted Because JadooTV Failed to Respond to Discovery Pertaining to Shah.

Shah's Motion should be denied. However, if the Court is inclined not to deny it, it should defer its ruling until DISH has the opportunity to do additional discovery.[15] A plaintiff need only make a "colorable showing" for personal jurisdiction "in order to obtain discovery on jurisdictional facts[.]" *See, e.g., Mitan v. Feeney,* 497 F. Supp. 2d 1113, 1119 (C.D. Cal. 2007). DISH has made such a showing, despite the fact that JadooTV has not produced a single document in this case. (*See* Dkts. 69, 75.) Accordingly, it would be an abuse of discretion to deny jurisdictional discovery if the Court is inclined not to deny the Motion. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1135

---

[15] *See In re Miller*, 262 B.R. 499, 503-507 (9th Cir. BAP 2001) (finding that in multi-party litigation discovery pertaining to claims against the bankrupt's co-defendants is not stayed, even if the discovery requires a response from the debtor, and even if the information could later be used against the debtor).

DISH's Opposition to Haseeb
Shah's Motion to Dismiss

(9th Cir. 2003) (stating that a court will have "abused its discretion in denying jurisdictional discovery" when "further discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction"); *Disney Enter., Inc. v. Fun Vacation Network, LLC*, No. LA CV15-08062 JAK (PJWx), 2016 WL 7444860, at *7 (C.D. Cal. May 16, 2016) (concluding that where jurisdiction turned on applying the fiduciary shield doctrine and plaintiff claimed defendant was the "moving force" behind the infringement while defendant claimed he was a mere "employee," jurisdictional discovery was warranted).

### III.   CONCLUSION

Shah's Motion should be denied. First, Shah has been properly served. Shah has received the Complaint at least four times – most recently with personal service from two attorneys in Pakistan. Personal service is proper under Rule 4 and the Hague Service Convention, and Shah's self-serving and unsupported declaration fails to overcome the presumption of proper service. Second, Shah is subject to personal jurisdiction. The fiduciary shield doctrine does not apply for two reasons. Shah was admittedly an independent contractor for IDC, and likewise, his contacts with the forum on behalf of JadooTV as demonstrated through his personal control of domain names and computer servers show he was not acting as an agent for IDC. Finally, Shah was the person in charge of transmitting content to Jadoo Users in the forum, as demonstrated through Shah and JadooTV's own admissions and through Shah's control of JadooTV's financial accounts. Shah's actions subject him to jurisdiction under the "primary participant" exception to the fiduciary shield doctrine.

DISH's Opposition to Haseeb
Shah's Motion to Dismiss

1

Dated: June 20, 2019                     Respectfully submitted,

2

By: */s/ Stephen M. Ferguson*

3

Stephen M. Ferguson (*pro hac vice*)

stephen.ferguson@hnbllc.com

4

Timothy M. Frank (California Bar No. 263245)

timothy.frank@hnbllc.com

5

Joseph H. Boyle (*pro hac vice*)

6

joe.boyle@hnbllc.com

7

HAGAN NOLL & BOYLE LLC

820 Gessner, Suite 940

8

Houston, Texas 77024

9

Telephone: (713) 343-0478

Facsimile: (713) 758-0146

10

11

David A. Van Riper (California Bar No. 128059)

12

dave@vanriperlaw.com

VAN RIPER LAW

13

1254 Irvine Blvd., Suite 200

14

Tustin, California 92780-3571

Telephone: (714) 731-1800

15

Facsimile: (714) 731-1811

16

17

*Attorneys for Plaintiffs DISH Network L.L.C.*

18

19

20

21

22

23

24

25

26

27

28

26