Mark Punzalan (CA Bar No. 247599)
Email: mark@chanpunzalan.com
Nicole Daryanani (CA Bar No. 328068)
Email: nicole@chanpunzalan.com
CHAN PUNZALAN LLP
2000 Alameda de las Pulgas, Suite 154
San Mateo, CA 94403
Telephone: 650.362.4150
Fax: 650.362.4151

Counsel for Defendants
*Jadoo TV, Inc. and Sajid Sohail*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DISH NETWORK L.L.C.,<br><br>　　　　Plaintiff,<br>　　vs.<br><br>JADOOTV, INC., SAJID SOHAIL, HASEEB SHAH, EAST WEST AUDIO VIDEO, INC., and PUNIT BHATT,<br><br>　　　　Defendants. | Case No. 2:18-cv-09768-FMO-KS<br><br>**REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA BY DEFENDANTS JADOO TV, INC. AND SAJID SOHAIL**<br><br>Date: March 12, 2020<br>Time: 10:00 am<br>Courtroom: 6D<br>Judge: Honorable Fernando M. Olguin |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

JadooTV is a small family-owned business run by Sajid Sohail that has been moving through a bankruptcy proceeding before Judge William Laferty in the Northern District of California over the past seven months. DISH, meanwhile, is a multibillion-dollar company that has virtually unlimited resources to continue to litigate this case aggressively regardless of the court it happens to be located in. Keenly aware of that power dynamic, DISH strategically chose to file this lawsuit in the Central District of California even though almost all of its allegations concern actions by JadooTV, which is based in the San Francisco Bay Area. Fortunately, the federal discretionary transfer statute, 28 U.S.C. § 1404(a), grants district court judges considerable latitude to correct power imbalances like this one. Transferring this case to the Northern District of California—where both JadooTV's bankruptcy case and a patent infringement lawsuit between DISH and JadooTV are already pending—makes sense not only for the sake of judicial efficiency, but for the specific witnesses and parties involved in this lawsuit.

In opposition, DISH continues to lean heavily on its paper-thin allegations against one of the other defendants it chose to name in its complaint: East West Audio Video, Inc. ("East West"). But East West is simply one of JadooTV's hundreds of retailers across the country and is no more than a bit player in this drama. Any significance that this one retailer has to this litigation has been wholly manufactured by DISH and the company's investigative team as they laid the groundwork for this lawsuit. As the Court noted on its own initiative months ago, "the bulk of [DISH's] factual allegations concern JadooTV, not defendant East West." Dkt. No. 79. For that reason and others discussed below, JadooTV requests that this case be transferred to the district where it should have been brought in the first place: the Northern District of California.

## II. STATEMENT OF ISSUES TO BE DECIDED

Whether DISH's claims should be transferred to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a) for the convenience of the parties, the convenience of the witnesses, and in the interests of justice.

//

## III. ARGUMENT

Courts deciding whether to order a discretionary transfer under 28 U.S.C. § 1404(a) make a "case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The Ninth Circuit provided a framework to guide that analysis in *Jones v. GNC Franchising, Inc.*, where it listed a series of ten factors that a district court "may" consider in assessing a potential transfer. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000). As the *Jones* framework acknowledges, "[a] motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination as to whether transfer is appropriate in a particular case." *Id.* at 498. That said, the *Jones* factors are "non-exclusive" and the Court has "broad discretion" to choose how it evaluates the factors in order to reach a fair outcome. *E.g.*, *OptoLum, Inc. v. Cree, Inc.*, 244 F. Supp. 3d 1005, 1009 (D. Ariz. 2017).

The Court's task of balancing competing interests here is somewhat more straightforward than usual. First, as JadooTV noted in his opening brief, Dkt. 139 ("Opening Brief") at 3-4, half of the *Jones* factors do not apply to DISH's lawsuit:

| # | Quoted *Jones* factor | Inapplicable because: |
|---|---|---|
| 1 | "the location where the relevant agreements were negotiated and executed" | There are no relevant agreements between DISH and JadooTV. |
| 2 | "the state that is most familiar with the governing law" | DISH brings federal copyright claims, which any federal court can adjudicate. |
| 7 | "the availability of compulsory process to compel attendance of unwilling non-party witnesses" | No such unwillingness exists. |
| 9 | "the presence of a forum selection clause" | There is no such clause. |
| 10 | "the relevant public policy of the forum state, if any" | No such public policy interest exists. |

### A. Considered together, the five remaining *Jones* factors support transfer.

After removing the inapplicable factors described above, five *Jones* factors remain for the Court to balance in its discretion. They are:

| # | Quoted *Jones* factor | Supports transfer to Northern District? |
|---|---|---|
| 3 | "the plaintiff's choice of forum" | No, but the plaintiff's choice of venue is not controlling. |

| | | |
|---|---|---|
| 4 | "the respective parties' contacts with the forum" | Yes. JadooTV has extensive contacts with the Northern District and very few contacts with the Central District. DISH, a national corporation, has extensive contacts with almost all major U.S. cities. |
| 5 | "the contacts relating to the plaintiff's cause of action in the chosen forum" | Yes. Almost all of JadooTV's alleged conduct would have occurred in the Northern District. |
| 6 | "the differences in the costs of litigation in the two forums" | Yes. Continuing to litigate this case here would dramatically increase costs, given the location of the evidence and witnesses. |
| 8 | "the ease of access to sources of proof" | Yes. Almost all records that might be relevant are located in the Northern District. |

Only the first of these relevant *Jones* factors favors DISH; all four of the others support transfer. JadooTV addresses each in turn now.

**1. DISH's decision to file in an arbitrary forum is not controlling.**

DISH's "choice of forum alone is not controlling in this matter." *Hawkins v. Gerber Prod. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013) (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). While DISH's decision to bring this lawsuit in the Central District is entitled to some deference, "[n]o single factor is dispositive, and a district court has broad discretion to adjudicate motions for transfer on a case-by-case basis." *Ctr. for Biological Diversity v. Kempthorne*, No. 08-1339, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008). Two aspects of this case suggest that the "plaintiff's choice of forum" factor is less important here than it might ordinarily be. First, the factor is given less weight "where there are not significant contacts between the forum and the allegations of the complaint." *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 777 (N.D. Cal. 2014); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). DISH's complaint focuses almost exclusively on allegedly infringing behavior by JadooTV, all of which would have occurred in the Northern District, not in the Central District. Second, even after affording a reasonable amount of deference to DISH's arbitrary choice of forum, "significant inconvenience or unfairness will justify transfer." *Ryan v. Microsoft Corp.*, No. 14-CV-04634-LHK, 2015 WL 1738352 at *5 (N.D. Cal. April 10, 2015). If this lawsuit stays in the Central District, JadooTV will continue to incur additional expenses that would put the company (and Sohail personally) in a

very difficult financial situation.

Contrary to DISH's allegations, JadooTV has operated at a loss for the past several years. While the company has very recently stabilized enough to lift the bankruptcy stay in this action, it is still consistently losing money. Supplemental Declaration of Sajid Sohail ("Sohail Decl.") ¶ 2. In opposition, DISH continues to ignore JadooTV's financial struggles and the bankruptcy proceeding altogether and instead self-servingly emphasize that JadooTV "grossed tens of millions of dollars over more than ten years in business." Dkt. 142 ("Opposition"), at 6-7. Even if true, this is irrelevant. There is no inconsistency between the fact that JadooTV might have had some success in the past but is now under significant financial pressure. Adding further strain to the company's situation now amounts to the type of "significant inconvenience or unfairness" that justifies a transfer. District courts in the Ninth Circuit are free to expressly consider "the relative means of the parties" like this. *E.g.*, *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1107-08 (N.D. Cal. 2001). In fact, that type of analysis is even recognized as a formal factor in other federal circuits' articulations of the test of what transfer outcome is convenient and fair. *E.g.*, *Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693 (S.D.N.Y. 1994). Put simply, the Court should not permit DISH to press its strategic advantage against JadooTV quite this aggressively.

**2. The two "contacts" factors both weigh in favor of transfer.**

In this case, the "the respective parties' contacts with the forum" (*Jones* Factor #4) and "the contacts relating to the plaintiff's cause of action in the chosen forum" (*Jones* Factor #5) go hand-in-hand. JadooTV's contacts with the Northern District are extensive: the company is headquartered there, its founder Sajid Sohail lives there with his family, and virtually all of the company's United States-based staff lives and works there. *See* Opening Brief, at 6-7. DISH, meanwhile, has extensive contacts with most major cities in the United States and will be largely unaffected by any transfer.

The allegations in DISH's complaint do not provide any specific reason to tether this case to the Central District either. The company's boilerplate copyright infringement allegations focus on conduct by JadooTV, virtually all of which necessarily occurred in the Northern District.

4

JadooTV and DISH already have a patent infringement lawsuit pending in the Northern District, and JadooTV's bankruptcy proceeding remains pending there as well. Transferring this action to the Northern District—where it could then potentially be consolidated with the existing patent lawsuit—serves the interests of judicial efficiency and prevents waste by all parties involved. Opening Brief, at 6-7. DISH's last-ditch attempts to inflate JadooTV's sales presence in Southern California does nothing to change this conclusion: The Central District is simply one JadooTV sales region among many, and not an especially large one at that. *See* Sohail Decl. ¶ 3 (sales to the Central District account for only 35% of JadooTV's total California sales).

### 3. The two cost factors also strongly favor transfer.

The two cost-related related factors—"the differences in the costs of litigation in the two forums" (*Jones* Factor #6) and "the ease of access to sources of proof" (*Jones* Factor #8)—ask the district court deciding a transfer motion to consider where witnesses and evidence are located relative to where the case will be heard.

DISH has cobbled together a list of four witnesses that it plans to call at trial who allegedly reside in the Central District. Opposition, at 16. But all four of these witnesses are directly related to East West, the additional defendant that DISH intentionally included so it could file this case here in the first place. As JadooTV detailed in its opening papers, "Mr. Sohail and his small remaining JadooTV U.S. team are located in the San Francisco Bay Area, as are the witnesses who will appear at trial—including at least six authorized resellers." Opening Brief, at 7. DISH now complains that JadooTV did not list the names of each of these resellers in its opening papers. While JadooTV was not required to do so, it names them here now. *See* Sohail Decl. ¶ 4. Mr. Sohail and his team will be the principal witness called in this case, and all of JadooTV's corporate records are located in the Northern District. The only reason DISH has *any* potential witnesses from the Central District is the sideshow about East West that DISH itself created; the Northern District witnesses are plainly going to provide the bulk of the testimony if this case goes to trial. "The convenience of witnesses is often the most important factor in determining whether a § 1404 transfer is appropriate[,]" so this factor weighs heavily in favor of transfer here. *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 762 (C.D. Cal. 2016).

**B. The Northern District was a proper venue for all defendants at the time of filing.**

As the Court has already recognized, "the bulk of [DISH's] factual allegations concern Jadoo TV, not defendant East West." Dkt. No. 79. But in opposition, DISH has continued to double down on its obsession with one of JadooTV's hundreds of retailers, Defendant East West. This time, it claims that JadooTV has failed "to establish proper venue as to East West under the terms of the [ . . .] the mandatory copyright venue statute." Opposition, at 9. Under that statute, copyright actions "may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). "The Ninth Circuit interprets this statutory provision to allow venue 'in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state.'" *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 959 (N.D. Cal. 2015).

Here, given its longstanding business relationship with JadooTV, East West has substantially more than the required "minimum contacts with [the Northern District] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement* 326 U.S. 310, 316 (1945). The Northern District was therefore an appropriate venue at the time DISH filed this case. Much of DISH's argument to the contrary relies on discredited declarations from Punit Bhatt and Renu Sharma. Each of these declarations is rife with misstatements and inaccuracies. For instance, DISH relies on the Bhatt declaration to suggest that JadooTV solicited East West's business in 2015 or 2016. Opposition, at 11. This is plainly not so: East West has been selling JadooTV products since at least 2010, as is readily apparent from JadooTV's sales records. Sohail Decl. ¶ 5; Ex. 1. Elsewhere, DISH states that "[a]t the end of 2015, Sohail and his vice president visited a Jadoo retailer and former co-defendants in this case, East West, in this District and aggressively solicited them to be a JadooTV retailer." Opposition, at 11. Almost everything about this sentence is wrong. Not only had Mr. Bhatt had been ordering and selling JadooTV products since 2010—long before the alleged "solicitation" took place—but Mr. Sohail never visited the East West store in 2015. Sohail Decl. ¶ 5. Even if JadooTV had initiated the relationship with East West, venue would still be appropriate, given the depth of that sales

6

1  relationship and East West's extensive contacts with Northern District-based JadooTV.

### C. DISH's theory that JadooTV's motion is untimely is meritless.

This Court has the power to grant a 28 U.S.C. § 1404(a) transfer at any time. Despite that power, DISH now complains that JadooTV's current motion is "untimely." This is not true under the plain language of the statute, which imposes no such limitation. *See id.* ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.")

Separately, any delay by JadooTV is completely understandable, given the unique history of this case. Unlike DISH, JadooTV has limited resources. In the first several months after DISH filed, JadooTV was forced to focus its resources on its imminent bankruptcy proceeding rather than litigating the venue issue here. The Court raised the venue issue on June 10, 2019 (Dkt. 79), at which point the case against JadooTV was at a standstill under the automatic bankruptcy stay, *see* Dkt. 78. That stay only lifted earlier this year, and JadooTV filed its initial version of this motion mere weeks later on January 15, 2020 (Dkt. 127). JadooTV's motion is timely.

DISH's attempts to paint JadooTV as opportunistic are equally unconvincing. The company has not strategically "tried [its] luck in this Court[,]" as DISH suggests. Opposition, at 6. JadooTV did not choose to be here: it was sued in this forum and has done its best to juggle its bankruptcy proceeding and its defense since then. JadooTV's decision to litigate a small case in the Central District eight years ago without "complaining about inconvenience"—*see* Opposition, at 7-8—is also totally irrelevant to the Court's consideration of this motion. That case had nothing to do with this one. Indeed, that 2012 case involved a very small one-person television channel based in Los Angeles, so the connection to this forum was much stronger than the tenuous claims DISH has attempted to rely on here. That case also settled quickly in mediation, so venue was largely a moot point. It is unclear why JadooTV's litigation strategy in that situation has to do with its position in this litigation now, and DISH cites no caselaw making a compelling connection.

### IV. CONCLUSION

DISH is a multibillion-dollar company with the resources and to continue to prosecute this

7

1. case wherever it may end up. JadooTV is small operation by comparison that has neither the
2. funding nor the manpower necessary to meaningfully defend itself if litigation continues here.
3. Fortunately, 28 U.S.C. § 1404(a) empowers the Court to transfer this action to the district in which
4. it should have been brought in the first place: The Northern District of California, a district where
5. JadooTV is already litigating a patent action with DISH and its bankruptcy action. Since this
6. lawsuit "might have been brought" there at the outset and such a transfer serves both the
7. convenience of the parties and the interests of justice, JadooTV's motion should be granted.

Dated:  February 27, 2020

CHAN PUNZALAN LLP

*/s/ Mark Punzalan*
Mark Punzalan

*Counsel for Defendants*
*Jadoo TV, Inc. and Sajid Sohail*