JS-6



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DISH NETWORK, LLC, | ) | Case No. CV 18-9768 FMO (KSx) |
| Plaintiff, | ) | |
| v. | ) | **ORDER RE: PENDING MOTIONS** |
| JADOO TV, INC., <u>et</u> <u>al.</u>, | ) | |
| Defendants. | ) | |

Having reviewed the briefing filed with respect to (1) defendant Haseeb Shah's ("Shah") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(5), (Dkt. 74, "Personal Jurisdiction Motion") and (2) the Motion to Change Venue filed by defendants JadooTV, Inc. and Sajid Sohail, (Dkt. 139, "Transfer Motion"), the court finds that oral argument is not necessary to resolve the motions, <u>see</u> Fed. R. Civ. P. 78; Local Rule 7-15; <u>Willis v. Pac. Mar. Ass'n</u>, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## <u>BACKGROUND</u>

On November 20, 2018, plaintiff Dish Network, LLC ("plaintiff" or "Dish") filed suit against defendants JadooTV, Inc., Sajid Sohail, Haseeb Shah, East West Audio Video, Inc., and Punit Bhatt, alleging claims of copyright infringement.  (Dkt. 1, Complaint).  On March 20, 2019, defendants East West Audio Video, Inc. and Punit Bhatt were dismissed from the case.  (<u>See</u> Dkt. 55, Court's Order of March 20, 2019).  Plaintiff's claims against JadooTV, Inc., Sajid Sohail, and Haseeb Shah remain pending.

Dish is a Colorado limited liability company with its principal place of business in Englewood, Colorado. (Dkt. 1, Complaint at ¶ 6). Dish did not provide information on who its members are or the states in which they reside. (See, generally, id.). JadooTV is a California corporation with its principal place of business in Pleasanton, California. (See id. at ¶ 7). Sajid Sohail ("Sohail") is an individual residing in Pleasanton, California. (See id. at ¶ 8). Haseeb Shah ("Shah") is an individual residing in Islamabad, Pakistan. (See id. at ¶ 9).

"JadooTV distributes, sells, and promotes Jadoo branded set-top boxes to consumers to be used to receive JadooTV's television service." (Dkt. 1, Complaint at ¶ 21). Sohail is the founder, chief executive officer, president, and an owner of JadooTV. (Id. at ¶ 8). Plaintiff alleges that defendant Shah is "an agent of JadooTV and acted within the scope of such agency when engaging in the infringing activities as alleged herein."[1] (Id. at ¶ 9).

JadooTV provides its customers access to many channels, including certain channels to which plaintiff claims it has the exclusive right to distribute "by means including satellite, OTT, Internet protocol television ('IPTV'), and Internet." (See Dkt. 1, Complaint at ¶¶ 17-19, 26). Plaintiff alleges that JadooTV initially "designed its service to direct stream unlicensed television channels through the Jadoo branded set-top box[.]" (Id. at ¶ 2). Later, JadooTV "changed the way it offered unlicensed channels by requiring users to download extra software files to their Jadoo set-top boxes to integrate those channels." (Id.). Today, "the latest model Jadoo set-top boxes are sold to users preconfigured to locate and install software files needed to integrate the unlicensed television channels and seamlessly incorporate those channels into the Jadoo on-screen electronic program guide." (Id. at ¶ 3). Plaintiff claims that the app through which JadooTV customers access Dish's channels is "one of the key features of its set-top boxes[.]" (Id. at ¶ 27). Plaintiff also alleges that JadooTV provided "third-party direct infringers" with "the missing passphrase and passphrase field name[,]" so that the third-party infringers could provide plaintiff's channels to JadooTV customers. (Id. at ¶ 29). According to plaintiff, JadooTV provides its

---

[1] As explained below, Dish's assertions in its opposition to the Personal Jurisdiction Motion regarding Shah's relationship with JadooTV appear to conflict with or cast doubt on Dish's allegations in the Complaint that Shah was an agent of JadooTV. See infra at § I.

1  customers with video on-demand content that "includes movies and television shows that aired

2  on" plaintiff's channels.  (Id. at ¶ 48).

3  　　Shah provided services to JadooTV "through [his] work for IDC Resources[.]"  (See Dkt. 74-

4  1, Declaration of Haseeb Shah in Support of Motion to Dismiss ("Shah Decl.") at ¶¶ 22-24).

5  Plaintiff alleges that Shah controlled the servers where allegedly infringing content was stored

6  and/or transmitted to JadooTV users.  (See, e.g., Dkt. 1, Complaint at ¶ 49) ("Upon information

7  and belief, Jadoo [video on-demand] content is and was hosted and transmitted to Jadoo Users

8  from computer servers, at least some of which were controlled by Shah, who is an agent of

9  JadooTV.").  Specifically, plaintiff claims that Shah controlled domains, including one called

10  betacdnzone.com, and computer servers, including a Verizon computer server, that he used to

11  transmit allegedly infringing content.[2]  (See Dkt. 81-1, Duval Decl. at ¶¶ 6, 10-13).  According to

12  plaintiff, Shah used GitHub accounts to provide GitHub files, including allegedly infringing content,

13  that added eMedia South Asian Super Pack and video on-demand to Jadoo set-top boxes.  (See

14  Dkt. 81-3,  Ferguson Decl. ISO Opp. to Personal Jurisdiction Motion at ¶¶ 20, 23 (b, i, o)).  Plaintiff

15  alleges that transmissions from the servers Shah controlled went to JadooTV users in the United

16  States and California.  (See Dkt. 1, Complaint at ¶ 13).

17  　　Plaintiff claims that Shah accessed JadooTV's PayPal accounts 383 times and "accounted

18  for 112 transactions totaling more than $50,500."  (Dkt. 81, [Plaintiff's] Opposition to [Shah's]

19  Motion to Dismiss ("Personal Jurisdiction Motion Opp.") at 10; Dkt. 81-3, Ferguson Decl. ISO Opp.

20  to Personal Jurisdiction Motion at ¶¶ 23-24).  The payments made by Shah were primarily to

21  content delivery networks ('CDNs'), which follows the responsibilities of Shah to manage

22  JadooTV's use of CDNs.  (See Dkt. 81-3, Ferguson Decl. ISO Opp. to Personal Jurisdiction Motion

23  at ¶ 24, Exh. 28).  Finally, plaintiff alleges that Shah  used a Google account to provide a YouTube

24  Video that shows users how to locate and install the eMedia South Asian Super Pack to JadooTV

25

26  　　[2]  Plaintiff asserts that Shah registered the domain name and servers under various aliases.

27  (See Dkt. 81-1, Declaration of Gregory Duval ("Duval Decl.") at ¶¶ 7, 10-13); (Dkt. 81-3,
   Declaration of Stephen M. Ferguson in Opposition to Defendant Haseeb Shah's Motion to Dismiss

28  ("Ferguson Decl. ISO Opp. to Personal Jurisdiction Motion") at ¶¶ 14 & 21; Exhs. 16 & 26).

1    set-top boxes through which they could access content, including allegedly infringing content.

2    (See id. at ¶¶ 17(c), 23(o), Exhs. 19 & 20).

3          According to Shah, "people can use a Jadoo TV set-top box to access the video content

4    on the Jadoo TV servers from anywhere in the world." (Dkt. 74-1, Shah Decl. at ¶ 31). Shah does

5    not personally "advertise to any customers or potential customers in the United States[,]" (id. at

6    ¶ 34), and the servers he manages "do not engage in any commercial transactions with any

7    customer, anywhere in the world." (Id. at ¶ 32).

8          The majority of JadooTV's operations are in Pakistan. (See Dkt. 139-1, Declaration of Sajid

9    Sohail in Support of Motion to Transfer ("Sohail Decl.") at ¶ 6). JadooTV's United States office is

10   in Northern California. (See Dkt. 1, Complaint at ¶ 7). All JadooTV employees in the United

11   States live and work in the San Francisco Bay Area. (See Dkt. 139-1, Sohail Decl. at ¶¶ 5-6).

12   Each witness JadooTV plans to call at trial – except witnesses employed by plaintiff – resides in

13   Northern California. (See id. at ¶ 9).

14         Although JadooTV has "dozens of authorized retailers across the United States," (see Dkt.

15   139-1, Sohail Decl. at ¶ 7), JadooTV had some contacts with the Central District of California that

16   are relevant to this lawsuit. For example, Punit Bhatt, president of former defendant East West

17   Audio, testified that JadooTV sought out retailers in Los Angeles County and the surrounding

18   areas to sell JadooTV's set-top boxes. (See Dkt. 142-3, Declaration of Punit Bhatt at ¶ 12).

19   Additionally, according to JadooTV's website, JadooTV employs a Regional Sales Manager in this

20   District. (See Dkt. 142-1, Declaration of Stephen M. Ferguson in Opposition to JadooTV, Inc. and

21   Sajid Sohail's Motion to Transfer Venue to the Northern District of California ("Ferguson Decl. ISO

22   Opp. to Transfer Motion") at ¶ 3); (Dkt. 142-2, Exh. 2). Finally, plaintiff claims that it plans to call

23   at least four non-party witnesses who reside in the Central District. (See Dkt. 142, Dish Network

24   LLC's Opposition to Defendants' Motion to Transfer Venue ("Transfer Motion Opp.") at 11).

25                                  **LEGAL STANDARDS**

26   I.    PERSONAL JURISDICTION.

27         There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose')

28   jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers Squibb Co.

v. Super. Ct. of Cal., S.F. Cty., 137 S.Ct. 1773, 1780 (2017).  As to general jurisdiction, for "an individual the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."  Id. (internal quotation marks omitted).  For specific jurisdiction, a suit must "arise out of or relate to the defendant's contacts with the forum[,]" i.e., "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  Id. (alterations, emphasis and internal quotation marks omitted).  "[A] defendant's general connections with the forum are not enough."  Id. at 1781.  There must be "a connection between the forum and the specific claims at issue."  Id.  In other words, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State."  Id.  Finally, "a defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."  Id. (internal quotation marks omitted; alterations in original).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits."  Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011).  "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004).

The Due Process clause requires that nonresident defendants have "minimum contacts" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice."  Schwarzenegger, 374 F.3d at 801 (internal quotation marks omitted).  The court may assert personal jurisdiction over a non-resident defendant if three requirements are met: "(1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates

1    to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with

2    fair play and substantial justice, i.e. it must be reasonable." Id. at 802.

3            Plaintiff bears the burden of satisfying the first two prongs of this test.   See

4    Schwarzenegger, 374 F.3d at 802.  If plaintiff satisfies this burden, the burden shifts to defendant

5    to make a "compelling case" that the third prong – the reasonableness of the exercise of personal

6    jurisdiction – is not met. Id. (internal quotation marks omitted).  "If any of the three requirements

7    is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law."

8    Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal quotation marks

9    omitted).

10           The court engages in "purposeful availment" analysis for contract cases and "purposeful

11   direction" analysis for tort cases.  See Schwarzenegger, 374 F.3d at 802.  The court's analysis

12   "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with

13   persons who reside there." Walden v. Fiore, 571 U.S. 277, 285, 134 S.Ct. 1115, 1122 (2014).

14   II.    TRANSFER UNDER 28 U.S.C. § 1404(a).

15           "For the convenience of parties and witnesses, in the interest of justice, a district court may

16   transfer any civil action to any other district or division where it might have been brought or to any

17   district or division to which all parties have consented."  28 U.S.C. § 1404(a) ("§ 1404(a)").  An

18   action "might have been brought" in a court where "the transferee court would have had subject

19   matter jurisdiction at the time the action was filed; defendants would have been subject to personal

20   jurisdiction; and venue would have been proper." E. & J. Gallo Winery v. F. & P. S.p.A., 899

21   F.Supp. 465, 466 (E.D. Cal. 1994); Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of

22   Texas, 571 U.S. 49, 57, 134 S.Ct. 568, 578 (2013) ("[W]e construe[] the phrase 'where it might

23   have been brought' to refer to the federal laws delimiting the districts in which such an action may

24   be brought[.]") (internal quotation marks omitted).   Under § 1404(a), the court has "broad

25   discretion to transfer a case to another district where venue is also proper." Amini Innovation

26   Corp. v. JS Imports, Inc., 497 F.Supp.2d 1093, 1108 (C.D. Cal. 2007).

27           "The purpose of § 1404(a) is to prevent the waste of time, energy, and money and to

28   protect litigants, witnesses and the public against unnecessary inconvenience and expense." Metz

1    v. U.S. Life Ins. Co. in City of N.Y., 674 F.Supp.2d 1141, 1145 (C.D. Cal. 2009) (internal quotation

2    marks omitted).  "The burden is on the party seeking transfer to show that when these factors are

3    applied, the balance of convenience clearly favors transfer."  Lax v. Toyota Motor Corp., 65

4    F.Supp.3d 772, 776 (N.D. Cal. 2014) (citing Commodity Futures Trading Comm'n v. Savage, 611

5    F.2d 270, 279 (9th Cir. 1979)).  But where a plaintiff has chosen a forum with little or no

6    connection to the plaintiff "or the subject matter of the suit[,] . . . the burden on the defendant is

7    reduced and it is easier for the defendant to show that the balance of convenience favors transfer."

8    Gupta v. Perez, 2014 WL 2879743, *3 (N.D. Cal. 2014) (internal quotation marks and citation

9    omitted).

10         To support a motion for transfer, the moving party must first show "that venue is proper in

11    the transferor district[,]" and "that the transferee district is one where the action might have been

12    brought[.]" Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F.Supp. 503, 506 (C.D.

13    Cal. 1992).  If these two conditions are satisfied, the court must then weigh multiple factors to

14    determine whether a transfer of venue serves the convenience of the parties and witnesses and

15    promotes the interests of justice.  See id. at 506-07.  While there is no definitive list of factors,

16    courts typically look to some or all of the following factors to determine whether transfer to the

17    alternative forum is proper: (1) the location where the relevant events occurred or the relevant

18    agreements were negotiated; (2) plaintiff's choice of forum; (3) the convenience of the parties and

19    witnesses; (4) the ease of access to the evidence and the availability of compulsory process for

20    the attendance of unwilling witnesses; (5) the familiarity of each forum with the applicable law; (6)

21    any local interest in the controversy; and (7) the relative court congestion in each forum.  See

22    Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir.1986); Jones v. GNC

23    Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000); Atl. Marine Constr. Co., 571 U.S. at 62

24    n. 6, 134 S.Ct. at 581 n. 6 (describing "[f]actors relating to the parties' private interests" and

25    "[p]ublic-interest factors" for a court to consider in determining whether to transfer an action).

26    / / /

27    / / /

28

**DISCUSSION**

I.    WHETHER THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT SHAH.[3]

As an initial matter, the legal relationship between Shah and JadooTV is unclear from the record.  In the Complaint, plaintiff alleges Shah was an agent of JadooTV.  (See Dkt. 1, Complaint at ¶¶ 49 & 66).  In its opposition to the Personal Jurisdiction Motion, however, plaintiff seemingly changes its position and claims that on Shah took the actions alleged in the Complaint in his "personal capacity."[4]  (See Dkt. 81, Personal Jurisdiction Opp. at 8-9) ("Shah exercised control over JadooTV's transmissions of copyrighted programs from the Protected Content, not as an agent of IDC, but in his personal capacity.").  For his part, Shah is unaware of the specifics of the contractual relationships, if any, but he asserts that he provided "services related to network operations for Jadoo TV" "[t]hrough [his] work for IDC Resources[.]"  (Dkt. 74-1, Shah Decl. at ¶ 22).  Shah believes "IDC Resources has contracted with Jadoo TV, but [he does] not have personal knowledge of this."  (Id. at ¶ 24).  Because the court must examine defendant's contacts with the forum and because the nature of the agency relationship between Shah and JadooTV, if any, is unclear from the record, the court will look at Shah's own contacts with California and the United States, not those of JadooTV.  In other words, the court cannot find that Shah has sufficient contacts with the forum based on the "unilateral activity of another party or a third person," such as JadooTV.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183 (1985) (internal quotation marks omitted); see, e.g., id. at 475 n. 17, 105 S.Ct. at 2183 n. 17 ("Applying [the] principle [that unilateral activity of another party or a third person in the forum cannot confer personal jurisdiction over defendant], the [Supreme] Court has held that the Due

---

[3]  In the Personal Jurisdiction Motion, the parties dispute whether plaintiff sufficiently effected service of process on Shah.  (See, e.g., Dkt. 74, Personal Jurisdiction Motion at 2-8).  Because the court concludes that it lacks personal jurisdiction over Shah, it need not reach the question of proper service on Shah.

[4]  Plaintiff contended that Shah acted in his personal capacity as part of its opposition to Shah's argument that the fiduciary shield doctrine prevents this court's exercise of personal jurisdiction over him.  (See Dkt. 81, Personal Jurisdiction Motion Opp. at 7-15).  Because the court concludes that it lacks personal jurisdiction over Shah based on the traditional "minimum contacts" test, it need not decide whether Shah is also protected by the fiduciary shield doctrine.

1  Process Clause forbids the exercise of personal jurisdiction over an out-of-state automobile

2  distributor whose only tie to the forum resulted from a customer's decision to drive there; over a

3  divorced husband sued for child support payments whose only affiliation with the forum was

4  created by his former spouse's decision to settle there; and over a trustee whose only connection

5  with the forum resulted from the settlor's decision to exercise her power of appointment there[.]")

6  (citations omitted).

7        A.    Whether Shah Purposefully Directed His Activities Toward the Forum.

8        The first prong of the minimum contacts test "ensures that a defendant will not be haled into

9  a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral

10  activity of another party or a third person." Burger King Corp., 471 U.S. at 475, 105 S.Ct. at 2183

11  (1985) (internal citations and quotation marks omitted). As this is a copyright infringement action,

12  the purposeful direction test applies. See Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d

13  1064, 1069 (9th Cir. 2017) (noting that copyright infringement action "sounds in tort" and applying

14  the purposeful direction test); Autodesk, Inc. v. Kobayashi + Zedda Architects Ltd., 191 F.Supp.3d

15  1007, 1014 (N.D. Cal. 2016) ("Although the first requirement typically permits a showing of either

16  purposeful availment or purposeful direction, for copyright infringement actions, the Ninth Circuit

17  requires a showing of purposeful direction."). The Ninth Circuit evaluates purposeful direction

18  using the three-part "Calder-effects" test articulated by the Supreme Court in Calder v. Jones, 465

19  U.S. 783, 104 S.Ct. 1482 (1984). Rosen v. Masterpiece Marketing Group, LLC, 2015 WL

20  12860487, *5 (C.D. Cal. 2015). This test "requires that the defendant . . . have (1) committed an

21  intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows

22  is likely to be suffered in the forum state." Morrill v. Scott Financial Corp., 873 F.3d 1136, 1142

23  (9th Cir. 2017) (internal quotation marks omitted; alterations in original). There is no requirement

24  that defendant have any physical contacts with the forum state. See Schwarzenegger, 374 F.3d

25  at 803.

26        Although satisfaction of the three-prong effects test is still "relevant to the minimum contacts

27  theory, it will not, on its own, support the exercise of specific jurisdiction," absent compliance with

28  the requirements the Supreme Court articulated in Walden. See Axiom Foods, 874 F.3d at 1069-

70 ("In <u>Walden</u>, the Supreme Court rejected our conclusion that the defendants' knowledge of the plaintiffs' strong forum connections, plus the foreseeable harm the plaintiffs suffered in the forum, comprised sufficient minimum contacts. . . . The [Supreme] Court made clear that we must look to the defendant's own contacts with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum. ¶ In light of the Court's instructions in <u>Walden</u>, mere satisfaction of the test outlined in <u>Washington Shoe</u>, without more, is insufficient to comply with due process.") (internal quotation marks omitted).  Because the court concludes that plaintiff has not carried its burden to satisfy the effects test, the court need not proceed to the <u>Walden</u> analysis.  <u>See id.</u>

### 1.  **Intentional Act**.

"The meaning of the term 'intentional act' in our jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the intent to perform an actual physical act in the real world."  <u>Picot v. Weston</u>, 780 F.3d 1206, 1214 (9th Cir. 2015) (internal quotation marks omitted).  There is no requirement that the defendant "inten[d] to accomplish a result or consequence of that act."  <u>Schwarzenegger</u>, 374 F.3d at 806; <u>see</u>, <u>e.g.</u>, <u>id.</u> at 803 (placing a newspaper advertisement an intentional act); <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1020 (9th Cir. 2002) (operating a passive website held to be an intentional act).  Here, Shah committed intentional acts by managing and operating the servers and domain names as well as uploading YouTube videos.  <u>See</u> <u>supra</u> at Background.

### 2.  **Expressly Aimed at the Forum State**.

The second prong of the effects test asks whether defendant engaged in conduct "expressly aimed at the forum state[.]"   <u>Schwarzenegger</u>, 374 F.3d at 805.  "The exact form of [a court's] analysis varies from case to case and depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue."  <u>Picot</u>, 780 F.3d at 1214 (internal quotation marks omitted).

Here, Shah maintained and operated domain names and servers through which content was transmitted to JadooTV users.  <u>See</u> <u>supra</u> at Background.  He also uploaded videos instructing JadooTV users on how to set up the eMedia South Asian Super Pack, through which users could access content, including allegedly infringing content.  <u>See</u> <u>supra</u> at <u>id.</u>  However,

there is no evidence that Shah created the instructional videos, that he knew who would access the videos, nor that he had even viewed them.  (See, generally, Dkt. 1, Complaint; Dkt. 81, Personal Jurisdiction Motion Opp.).  Additionally, there is no allegation that Shah personally engaged in any advertising of JadooTV or its content directed toward California or the United States.[5]  (See, generally, id.).

Shah argues that he did not "expressly aim" his conduct at California or the United States because his conduct resembled that of an operator of a "passive website" in a remote jurisdiction from which anyone could obtain content.  (Dkt. 74, Personal Jurisdiction Motion at 13).  According to Shah, he "does not himself distribute any video content."  (Id.).  Rather, he "manages the network and CDN operations for Jadoo TV and its servers."  (Id.).  The relevant servers "made the content available to Jadoo TV set-top boxes anywhere in the world."  (Id.).

The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed."  Mavrix Photo, 647 F.3d at 1229.  The Ninth Circuit has determined that "maintenance of a passive website alone cannot satisfy the express aiming prong."  Id. (internal quotation marks omitted).  On the other hand, "operating a passive website in conjunction with 'something more' – conduct directly targeting the forum – is sufficient."  Id. (internal quotation marks omitted).  In determining whether the nonresident defendant has done "something more," the Ninth Circuit considers several factors, "including the interactivity of the defendant's website, the geographic scope of defendant's commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident."  Id. (internal citations omitted).

Plaintiff seeks to rebut Shah's argument by first contesting the framing of the issue.  (See Dkt. 81, Personal Jurisdiction Motion Opp. at 18).  In plaintiff's view, Shah's argument on this

_____

[5]  Plaintiff alleges that "Shah [ ] promotes Jadoo set-top boxes through social media accounts including Facebook and Flickr."  (Dkt. 1, Complaint at ¶ 51).  But plaintiff does not allege that Shah directs these promotions at California or the United States.  (See, generally, id.).  Plaintiff provides an example of a Flickr post by Shah that it claims is an advertisement for JadooTV.  (See Dkt. 74-1, Ferguson Decl. ISO Personal Jurisdiction Motion Opp. at ¶ 19, Exh. 23).  Although the fact that the post was in English indicates that it targeted English speakers, plaintiff provides no evidence to show the post targeted the United States.

score fails because "Shah admittedly did not host a website for JadooTV, let alone a passive one." (Id.).  But Shah does not claim he hosted a website; rather, he reasons by analogy to a line of cases about websites.  (See, e.g., Dkt. 74, Personal Jurisdiction Motion at 13).  Plaintiff goes on to contend that "Shah knew exactly who his actions were targeting – paying users of JadooTV, a significant number of which were in the forum."  (See Dkt. 81, Personal Jurisdiction Motion Opp. at 18).  But plaintiff provides no evidence that Shah knew where JadooTV's customer base was located.  The closest plaintiff comes to providing such evidence is an email from an account controlled by Shah to Highwinds Network Group, Inc.  (See Dkt. 81-3, Ferguson Decl. ISO Opp. to Personal Jurisdiction Motion at ¶ 21(b); Exh. 26 at ECF 1347).  In this email, Shah reported "buffering issues" based on complaints coming from the United States.  (Id.).  Such evidence, however, simply shows that Shah was aware that at least some JadooTV customers were located in the United States; it does not establish that he was aware of the number of JadooTV customers in the United States nor that his activities had a significant impact on the United States.  (See id.).

Finally, plaintiff argues that "something more" than managing the equivalent of a passive website was present here, i.e., commercial activity.  (See Dkt. 81, Personal Jurisdiction Motion Opp. at 18) ("Because the service Shah was providing to Jadoo Users was commercial, it satisfies the 'express aiming' requirement.").  But unless Shah's activities target the forum, the commercial nature of the website is insufficient to establish personal jurisdiction over Shah.  See DFSB Kollective Co. Ltd. v. Bourne, 897 F.Supp.2d 871, 881 (N.D. Cal. 2012) ("[T]hat a website is commercial in nature and interactive does not necessarily mean there is personal jurisdiction.").

Shah's management and operation of servers through which JadooTV customers could access content resembles the operation of a "passive website."  For instance, in Pebble Beach, 453 F.3d at 1156, the Ninth Circuit concluded that the defendant website owner had not expressly aimed his conduct toward California in part because the defendant operated a passive website that did not target California.  In this case, Pebble Beach, "a well-known golf course and resort located in Monterey County, California" sued Caddy, "a dual citizen of the United States and United Kingdom [who] occupies and runs a three-room bed and breakfast, restaurant, and bar located in southern England," for infringement of its use of its mark, "Pebble Beach."  Id. at 1153.

1    Caddy called his bed-and-breakfast "Pebble Beach and ran a website about the bed-and-breakfast

2    titled www.pebblebeach-uk.com." Id.  The website included general information about the bed-

3    and-breakfast, but was not interactive.  Id.  Website visitors could fill out a form to submit

4    questions, but could not book rooms or pay for services online.  Id. at 1153-54.  The court

5    concluded that plaintiff had not introduced any evidence that defendant's establishment and

6    operation of this website targeted California in any way.  Id. at 1158.  Similarly here, there is no

7    evidence that the servers or domain names that Shah managed allowed JadooTV customers to

8    "interact;" they simply allowed the customer to access content.  (See Dkt. 74-1, Shah Decl. at ¶¶

9    26 & 31).  In other words, "an internet domain name and passive website alone are not something

10   more, and, therefore, alone are not enough to subject a party to personal jurisdiction." Pebble

11   Beach, 453 F.3d at 1158 (quotation marks omitted).

12          Moreover, even if the servers were "interactive," rather than just access points for

13   information, that would not necessarily require the court to conclude that Shah expressly aimed

14   his conduct at California or the United States.  "If the defendant merely operates a website, even

15   a highly interactive website, that is accessible from, but does not target, the forum state, then the

16   defendant may not be haled into court in that state without offending the Constitution." DFSB

17   Kollective Co. Ltd., 897 F.Supp.2d at 881 (quoting be2 LLC v. Ivanov, 642 F.3d 555, 559 (7th Cir.

18   2011)).  The contrasting facts of Mavrix Photo illustrate the point.  There, a critical issue was

19   whether defendant, through his website, expressly aimed his conduct at California. Mavrix Photo,

20   647 F.3d at 1229.  The Ninth Circuit concluded that defendant expressly aimed his conduct at

21   California based on (1) an inference that defendant knew about its California user base and (2)

22   the website's subject matter with its "specific focus on the California-centered celebrity and

23   entertainment industries." Id. at 1230.  Here, while there is evidence that JadooTV is aware of the

24   size of the California market, there is no evidence of Shah's awareness of the scope of JadooTV's

25   customer base in California or the United States.  Moreover, there is no indication that Shah

26   participated in or was aware of a specific California or United States focus, if any, of the services

27   or content JadooTV provided.

28

Nor does the record contain evidence of "individualized targeting." "A theory of individualized targeting alleges that a defendant engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Axiom Foods, 874 F.3d at 1069 (internal quotation marks omitted). "In the context of copyright infringement [the Ninth Circuit has] held that a defendant's alleged willful infringement of [a plaintiff's] copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder, established individualized targeting." Id. (internal quotation marks omitted). There is no evidence that Shah knew that plaintiff was domiciled in Colorado and the United States. Therefore, plaintiff has not shown that Shah has engaged in individualized targeting.

Plaintiff also argues that Shah expressly aimed his activity at California or the United States in part because "JadooTV is headquartered in California and a significant portion of its users reside there[.]" (See Dkt. 81, Personal Jurisdiction Motion Opp. at 17). As previously explained, however, the only contacts the court can use to assess its personal jurisdiction over Shah are his own contacts, not those of his co-defendant JadooTV.

Additionally, plaintiff notes that some of the domains Shah controlled were located in New Hampshire, and some of the servers Shah used to transmit allegedly infringing content were located in the United States. (See Dkt. 81, Personal Jurisdiction Motion Opp. at 17-18). But the physical location of servers cannot confer the necessary contacts between a defendant and a forum for the exercise of personal jurisdiction. See Rosen v. Terapeak, Inc., 2015 WL 12724071, *9 (C.D. Cal. 2015) ("[T]he Court finds direction from other cases that have rejected the notion that the mere location of a server may give rise to personal jurisdiction."); Man-D-Tec, Inc. V. Nylube Prods. Co., LLC, 2012 WL 1831521, *2 (D. Ariz. 2012) ("If the mere location of a server could create personal jurisdiction, any state where a server is located would have personal jurisdiction over any user of that server."); Chang v. Virgin Mobile USA, LLC, 2009 WL 111570, *3 (N.D. Tex. 2009) (Plaintiff "cannot rely on the fortuitous location of [Defendant's] servers to establish personal jurisdiction[.]").

Finally, plaintiff notes that "GitHub and YouTube, which Shah used to assist Jadoo Users to add SASP to eMedia are also in the United States, specifically California[.]" (See Dkt. 81,

Personal Jurisdiction Motion Opp. at 18).  Were the court to conclude that any user of these networks expressly aimed his conduct at California, then California's personal jurisdiction would cover internet users whose only "contact" with California was posting content on YouTube, an impermissibly broad reading of the "express aiming" requirement.  This court joins several other courts in rejecting Shah's alleged use of GitHub and YouTube as bases for finding that he expressly aimed his conduct at California.  See, e.g., Browne v. McCain, 612 F.Supp.2d 1118, 1124 (C.D. Cal. 2009) (refusing to exercise jurisdiction over a defendant merely because of relationship with California-based YouTube that enabled copyright claim, and rejecting argument that presence of YouTube's servers in California was sufficient to establish personal jurisdiction); Doe v. Geller, 533 F.Supp.2d 996, 1009 (N.D. Cal. 2008) ("If plaintiff's theory of jurisdiction were upheld, then the Northern District of California could assert jurisdiction over every single takedown notice ever sent to YouTube or any other company in Silicon Valley.  Citizens around the world – from Indonesia to Italy, Suriname to Siberia – could all be haled into court in the San Francisco Bay area, California, USA, for sending off a fax claiming that a video clip is infringing.").

In short, the court concludes that Shah's management and operation of domain names and servers that can be accessed "anywhere in the world" and his uploading of instructional videos to YouTube and Flickr are insufficient to establish "express aiming" of his conduct at California or the United States.  The court concludes that Shah's activities resembled those of an operator of a passive website and that plaintiff has not shown the "something more" the case law requires to establish express aiming.

3.      **Causing Harm Defendant Knows is Likely to Be Suffered in the Forum State**.

Because plaintiff has not met the second prong of the purposeful direction test, the court need not consider this remaining prong of the test.  See, e.g., Michael Grecco Prods., Inc. v. NetEase Info. Tech. Corp., 2018 WL 6443082, *5 (C.D. Cal. 2018) ("Because Plaintiff has not met the first prong of the Ninth Circuit's specific jurisdiction test, the Court need not consider the remaining prongs.").

15

B.    <u>Whether Plaintiff's Claim Against Shah Arises Out of or Relates to Shah's Forum-Related Activities</u>.

Shah did not address this prong of the specific personal jurisdiction test. (<u>See</u>, <u>generally</u>, Dkt. 74, Personal Jurisdiction Motion). Accordingly, the court need not address it.

C.    <u>Whether the Exercise of Personal Jurisdiction over Shah Comports with Fair Play and Substantial Justice</u>.

Shah contends that exercising personal jurisdiction over him would not comport with fair play and substantial justice. (<u>See</u> Dkt. 74, Personal Jurisdiction Motion at 14-19). The court agrees, concluding that this prong of the personal jurisdiction test provides a second basis for declining to exercise personal jurisdiction over Shah. In determining whether the exercise of jurisdiction comports with fair play and substantial justice, courts consider the following factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1114 (9th Cir. 2002).

Here, five of the seven factors point toward declining the exercise of personal jurisdiction over Shah. The first factor – purposeful interjection – asks whether Shah "expressly aimed" his conduct at the forum. Because the court has already concluded that Shah did not expressly aim his conduct at California or the United States, <u>see</u> <u>supra</u> at § I.A.2., this factor weighs against the reasonableness of exercising personal jurisdiction. <u>See</u> <u>Sinatra v. Nat'l Enquirer, Inc.</u>, 854 F.2d 1191, 1199 (9th Cir. 1988) ("The factor or purposeful injection is analogous to the purposeful direction analysis discussed above."). Second, the burden on Shah of defending this suit in the United States would be substantial and weighs strongly against exercising jurisdiction. <u>See</u> <u>Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cty.</u>, 480 U.S. 102, 114, 107 S.Ct. 1026, 1033 (1982) ("The unique burdens placed upon one who must defend onself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of

1  personal jurisdiction over national borders.").  Shah resides in Pakistan, has never been to the

2  United States, and makes approximately $24,000 per year.  (Dkt. 74-1, Shah Decl. at ¶¶ 2 & 35).

3  Co-defendants paid for their law firm to draft the instant Personal Jurisdiction Motion, but Shah's

4  representation ended with their filing of the Personal Jurisdiction Motion.  (Id. at ¶ 39).  Given

5  Shah's annual income, he cannot afford to retain counsel in California to represent him in this

6  case.  (See id.).  Additionally, even if Shah represented himself pro se, the financial burden of

7  traveling to the United States would be immense.  (See id. at ¶¶ 36-39).  The cost of a single trip

8  from Pakistan to the United States is approximately $2,000.  (See id. at ¶ 37).  This means that

9  a single round trip could consume nearly ten percent of Shah's annual income.  (See id. at ¶¶ 36-

10  39).  Third, as Shah is a Pakistani citizen, the sovereignty barrier is high and weighs against

11  jurisdiction.  See Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc., 1 F.3d 848, 852 (9th Cir. 1993)

12  ("Where, as here, the defendant is from a foreign nation rather than another state, the sovereignty

13  barrier is high and undermines the reasonableness of personal jurisdiction.").

14         Fourth, the forum's interest in this controversy weighs in favor of finding jurisdiction.  The

15  United States has an interest in the enforcement of its copyright laws.  Microsoft Corp. v. Very

16  Competitive Comput. Prods. Corp., 671 F.Supp. 1250, 1256 (N.D. Cal. 1987) ("[T]here is a strong

17  interest in the policies of the federal copyright statutes that will be furthered by adjudicating the

18  case in this forum, as opposed to Taiwan.").  Additionally, California has an interest in deterring

19  infringement injuries in the state.  See Mysfyt, Inc. v. Lum, 2016 WL 6962954, *6 (N.D. Cal. 2016)

20  ("California has a strong interest in discouraging infringement injuries that occur within the state.").

21  Fifth, given that the evidence about Shah's actions is located mostly in Pakistan, the efficient

22  resolution of the controversy between plaintiff and Shah weighs against jurisdiction in this court.

23  See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1323 (9th Cir. 1998) (The Ninth Circuit has

24  held that efficient resolution "focuses on the location of the evidence and witnesses.").  Sixth, while

25  the convenience to plaintiff weighs in favor of jurisdiction, the court gives little weight to this factor.

26  Id. at 1324 ("In evaluating the convenience and effectiveness of relief for the plaintiff, we have

27  given little weight to plaintiff's inconvenience.").  Finally, plaintiff has not met its burden to show

28  it would have no remedy in Pakistani courts.  (See, generally, Dkt. 81, Personal Jurisdiction Motion

Opp. at 23-24); see Amoco Egypt, 1 F.3d at 853 (Plaintiff "has the burden of proving the unavailability of an alternative forum.").

In conclusion, because the first and third prongs of the Ninth Circuit's jurisdiction test have not been established, the court finds that it lacks personal jurisdiction over Shah.[6]  See, e.g., Boschetto v. Hansing, 539 F.3d 1011, 1021 (9th Cir. 2008) (if plaintiff fails to establish either prong one or two of the Ninth Circuit three-part test for specific jurisdiction, the "jurisdictional inquiry ends and the case must be dismissed").  The court dismisses plaintiff's suit against Shah without prejudice.

II.    WHETHER THE ACTION SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF CALIFORNIA.

Having concluded that it lacks personal jurisdiction over defendant Shah, the court now addresses defendants JadooTV and Sohail's Transfer Motion to assess whether plaintiff's case against these remaining defendants should be transferred to the Northern District of California. (See Dkt. 139, Transfer Motion).

/ / /

/ / /

---

[6]  In a footnote, plaintiff urges the court to find personal jurisdiction over Shah on the basis of Rule 4(k)(2) of the Federal Rules of Civil Procedure. (Dkt. 81, Personal Jurisdiction Motion Opp. at 19, n. 13).  "Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant if the defendant is not subject to jurisdiction in any state's courts of general jurisdiction and exercising jurisdiction is consistent with the United States Constitution and laws." Axiom Foods, 874 F.3d at 1072.  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between [the defendant] and the forum state, we consider contacts with the nation as a whole."  Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 462 (9th Cir. 2007).  As explained above, plaintiff has not produced evidence sufficient to establish that Shah expressly aimed his conduct at the United States.  Moreover, the court concludes that exercising personal jurisdiction over Shah would not comport with fair play and substantial justice. See supra at § I.C. Because two of the three prongs of the specific jurisdiction test are not met here, there is no basis to exercise personal jurisdiction under Rule 4(k)(2).

A.    <u>Preliminary Factors</u>.[7]

The court first considers whether this action "might have been brought" in the Northern District of California.

1.    **Whether the Action Might Have Been Brought in the Northern District of California**.

Section 1404(a) requires defendant to show that plaintiff could originally have filed the action in the transferee district.  <u>See</u> <u>HR Benefits Consulting, Inc. v. Copeland Grp. USA</u>, 2018 WL 6112614, *2 (C.D. Cal. 2018).  To make this showing, "a defendant must be subject to personal jurisdiction in the district of the transferee court, and be amenable to service of process there."  <u>Behrmann v. Houk</u>, 2016 WL 9724967, *4 (C.D. Cal. 2016) (citing <u>A.J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.</u>, 503 F.2d 384, 386-88 (9th Cir. 1974)).

Here, it is undisputed that the remaining defendants, JadooTV and Sohail, are subject to the general personal jurisdiction of the California courts because "Mr. Sohail and JadooTV both 'reside' in the Northern District [of California]."  (Dkt. 139, Transfer Motion at 6; Dkt. 142, Transfer Motion Opp. at 2-5); (Dkt. 1, Complaint at ¶ 7) ("Defendant Jadoo TV, Inc. is a California corporation with its principal place of business at . . . Pleasanton, California[.]").  Therefore, plaintiff

_____

[7]  The court may transfer a case pursuant to 28 U.S.C. § 1404(a) without deciding whether it has personal jurisdiction over a defendant or whether venue in this District is proper.  <u>See</u>, <u>e.g.</u>, <u>Kawamoto v. CB Richard Ellis, Inc.</u>, 225 F.Supp.2d 1209, 1211 (D. Haw. 2002) ("Because this court may transfer venue under either § 1404(a) or § 1406(a) without regard to whether it has personal jurisdiction over CBRE, this court need not decide the issue of personal jurisdiction before deciding to transfer venue."); <u>Multistate Legal Studies, Inc. v. Marino</u>, 1996 WL 786124, *10 (C.D. Cal. 1996) ("Upon thoughtful consideration of 28 U.S.C. § 1404(a) and related case law, the Court finds that 28 U.S.C. § 1404(a) may be utilized in this case, even though the Court has not made the threshold determination as to whether venue is proper in the Central District of California as to Marino and Grufferman."); <u>Microsoft Corp. v. Hagen</u>, 2010 WL 11527312, *1 (E.D. Cal. 2010) ("The court need not determine whether there is personal jurisdiction or proper venue in the Eastern District of California."); <u>Lozano v. Giovino</u>, 2015 WL 5023003, *3 n. 3 (E.D. Cal. 2015) (concluding that court "need not decide whether it has personal jurisdiction over a case before transferring it under 28 U.S.C. 1404(a)").  Because the court concludes that this case should be transferred to the Northern District of California on the basis of 28 U.S.C. § 1404(a), the court will rule on defendant's Motion without considering its other grounds for dismissal or transfer.

could have sued JadooTV and Sohail in the Northern District, provided that venue was proper there.  The court assesses venue in the next subsection.

Plaintiff argues that this suit could not have originally been brought in the Northern District of California because defendants East West Audio Video, Inc. and Punit Bhatt (collectively, "East West") would not be subject to venue in that district.  (See Dkt. 142, Transfer Motion Opp. at 2-5). Because East West and Bhatt are no longer part of the case, however, (see Dkt. 55, Court's Order of March 20, 2019), they do not pose an obstacle to transfer.  See Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. Eds. § 4:716.1, at 4-93 (The Rutter Group 2019) ("[A] § 1404(a) transfer may be granted where defendants as to whom venue would not be proper in the transferee court have settled or been dismissed from the action.") (emphasis in original).  Under these circumstances, the court "is not required to confine its venue consideration to the facts as they existed at the time of the complaint."  In re Fine Paper Antitrust Litig., 685 F.2d 810, 819 (3d Cir. 1982); see Qurio Holdings, Inc. v. DISH Network Corp., 2015 WL 4148962, *4 (N.D. Cal. 2015) (same).

2.   **Whether Venue is Proper in the Northern District of California**.

Under the relevant venue statute, "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found."  28 U.S.C. § 1400(a).  "[F]or claims of copyright infringement[,] venue is proper in the district in which the defendant or his agent resides or may be found.  The Ninth Circuit interprets [28 U.S.C. § 1400] to allow venue in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state."  Adobe Sys. Inc. v. Blue Source Grp., Inc., 125 F.Supp.3d 945, 959 (N.D. Cal. 2015) (internal citation and quotation marks omitted).

Here, venue is proper in Northern District of California because both defendant JadooTV and Sohail "reside" in that District.  (See Dkt. 139-1, Sohail Decl. at ¶¶ 2 & 5); 28 U.S.C. § 1400(a).

/ / /

/ / /

1      B.    Convenience of the Parties and Witnesses and the Interests of Justice.

2            1.    **Where the Events Occurred**.

3      The court first evaluates where the relevant events occurred.  In a copyright action, the

4   location of the development of the infringing product and the location of the sale of the infringing

5   product are both relevant.  See Mobile Tech, Inc. v. InVue Sec. Prods. Inc., 2018 WL 2558390,

6   *4 (C.D. Cal. 2018) (relevant location in patent suit was "where the allegedly infringing product was

7   designed, developed, and produced") (internal quotation marks omitted); Trust Safe Pay, LLC v.

8   Dynamic Diet, LLC, 2017 WL 8751928, *6 (C.D. Cal. 2017) (focusing on where the infringing

9   product was developed in conducting transfer analysis); Mysfyt, 2016 WL 6962954, *6 ("California

10  has a strong interest in discouraging infringement injuries that occur within the state.").  Plaintiff

11  does not make clear where JadooTV developed the set-top boxes through which its customers

12  access the allegedly infringing content.  (See, generally, Dkt. 1, Complaint).  JadooTV sells its set-

13  top boxes nationwide, not just in California.  (See Dkt. 139-1, Sohail Decl. at ¶ 7).  With respect

14  to California sales, although JadooTV made more sales in the Northern District of California than

15  it did in the Central District of California, it was by a small margin.  (See Dkt. 142-1, Ferguson

16  Decl. ISO Opp. to Transfer Motion at ¶ 7).  Accordingly, this factor is neutral.

17           2.    **Plaintiff's Choice of Forum**.

18      There is a strong presumption in favor of a plaintiff's choice of forum.  Decker, 805 F.2d at

19  843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the

20  plaintiff's choice of forum.").  But "[w]here a plaintiff does not reside in the forum, the Court may

21  afford plaintiff's choice considerably less weight." Vu v. Ortho-McNeil Pharm., Inc., 602 F.Supp.2d

22  1151, 1156 (N.D. Cal. 2009); see, e.g., Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472

23  F.Supp.2d 1183, 1191 (S.D. Cal. 2007) ("[P]laintiff's choice of forum receives less deference

24  because California is not plaintiff's domicile."); Sorensen v. Phillips Plastics Corp., 2008 WL

25  4532556, *4 (N.D. Cal. 2008) (according plaintiff's choice of forum less deference when plaintiff

26  resided in the Southern District of California and action was filed in the Northern District of

27  California).

28

1    Here, plaintiff has chosen to litigate in the Central District of California. (See Dkt. 1,

2  Complaint). But plaintiff is not a California resident. (Dkt. 1, Complaint at ¶ 6) ("Plaintiff DISH

3  Network L.L.C. is a Colorado limited liability company with its principal place of business at . . .

4  Englewood, Colorado[.]"). Accordingly, the court concludes that this factor is neutral.

5              3.    **Convenience of the Parties and Witnesses**.[8]

6    There is no dispute that litigating in the Northern District of California would be highly

7  convenient for JadooTV, as its offices are located in that District and Sohail lives there as well.

8  (See Dkt. 139-1, Sohail Decl. at ¶¶ 2 & 5). Moreover, JadooTV is currently litigating its bankruptcy

9  case in the Northern District. (See id. at ¶ 3). Given that plaintiff is a Colorado LLC, litigating in

10  the Northern District would be no more inconvenient for plaintiff than litigating in the Central

11  District; plaintiff does not contest this. (See, generally, Dkt. 142, Transfer Motion Opp. at 10).

12    The convenience of the witnesses – particularly non-party witnesses – is an important factor

13  in the transfer analysis. Park v. Dole Fresh Vegetables, Inc., 964 F.Supp.2d 1088, 1095 (N.D. Cal.

14  2013) ("Generally, litigation costs are reduced when venue is located near the most witnesses

15  expected to testify and the convenience of the witnesses is often the most important factor in

16  resolving the motion to transfer.") (internal quotation marks omitted); Saleh v. Titan Corp., 361

17  F.Supp.2d 1152, 1160 (S.D. Cal. 2005) ("Importantly, while the convenience of party witnesses

18  is a factor to be considered, the convenience of non-party witnesses is the more important

19  factor."). Although a closer call, the Northern District appears to be a more convenient venue for

20  more non-party witnesses. According to JadooTV, at least six of its non-party witnesses reside

21  in the Northern District of California or in nearby Sacramento. (See Dkt. 139-1, Sohail Decl. at ¶

22

---

23    [8] JadooTV argues that financial hardship supports transfer. (See Dkt. 139, Transfer Motion
   at 1-2). Plaintiff, however, disputes the extent of JadooTV and Sohail's financial hardship and
24  points out that JadooTV has provided little evidence to support its claims about its finances. (See
   Dkt. 142, Transfer Motion Opp. at 9-10). On the other hand, although the bankruptcy court in the
25  Northern District of California lifted the automatic stay so that plaintiff could prosecute its claims
   against JadooTV, (see Dkt. 132-2, Declaration of Stephen M. Ferguson in Support of Dish
26  Network, LLC's Motion to Compel JadooTV, Inc.'s Production of Documents ("Ferguson Decl. ISO
   Motion to Compel") at ¶ 15, Exh. 15), the fact that JadooTV filed for bankruptcy indicates that it
27  has minimal resources at its disposal. In any event, the court will not weigh JadooTV's financial
   situation in evaluating its Transfer Motion.
28

9).  Plaintiff, on the other hand, intends to call three non-party witnesses who live in the Central District of California.  (See Dkt. 142, Transfer Motion Opp. at 11).  In short, this factor weighs in favor of transfer.

### 4.   **Ease of Access to the Evidence**.

"In patent and copyright infringement actions, it is expected that the bulk of the relevant evidence usually comes from the accused infringer," in this case JadooTV.  Blumenthal Distrib., Inc. v. Herman Miller, Inc., 2015 WL 12747820, *7 (C.D. Cal. 2015) (internal quotation marks omitted).  The evidence in this case consists mostly of witnesses and documents that would be easily accessible regardless of forum.   The importance of the location of documents "has significantly lessened in light of recent technological advances."  M S Int'l, Inc. v. BR Construction & Stone, Inc., 2014 WL 12690755, *4 (C.D. Cal. 2014) (citing Szegedy v. Keystone Food Prods., Inc., 2009 WL 2767683, *6 (C.D. Cal. 2009) ("[E]ase of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations.")).  To the extent the court gives weight to the location of documentary evidence, this favors the Northern District because that is where JadooTV, the alleged infringer, has its U.S. office.  As for witnesses, as noted above, the Northern District provides easier access to JadooTV party witnesses and to more non-party witnesses. Therefore, this factor favors transfer.

### 5.   **Familiarity of Each Forum with the Applicable Law**.

All federal courts handle copyright cases; there can be no suggestion that one federal court is better equipped to apply federal law than another.  See, e.g., Cargill Inc. v. Prudential Ins. Co. of Am., 920 F.Supp. 144, 148 (D. Colo. 1996).  This factor is neutral.

### 6.   **Local Interest in the Controversy**.

"California has a strong interest in discouraging infringement injuries that occur within the state."  Mysfyt, 2016 WL 6962954, *6.  Here, JadooTV's sales volume of the set-top boxes which allow access to allegedly infringing content in the Northern and Central Districts of California was roughly equivalent. (See Dkt. 142-1, Ferguson Decl. ISO Opp. to Transfer Motion at ¶ 7).

1    Because the potential amount of infringement was similar in the two relevant Districts, the court

2    finds this factor neutral.

3            7.    **Relative Court Congestion**.

4        "The key inquiry in docket congestion is whether a trial may be speedier in another court

5    because of its less crowded docket. This factor turns on whether efficient and expeditious

6    administration of justice would be furthered by transfer." Baker v. Bayer Healthcare Pharm., Inc.,

7    2015 WL 4456085, *4 (N.D. Cal. 2015) (internal citations and quotation marks omitted). "However,

8    '[a]dministrative considerations such as docket congestion are given little weight in this circuit in

9    assessing the propriety of a § 1404(a) transfer.'" Id. (quoting Allstar Mktg. Grp., LLC v. Your Store

10    Online, LLC, 666 F.Supp.2d 1109, 1134 (C.D. Cal. 2009)). The parties do not indicate the

11    caseload in the Northern District of California, but the size of this District's caseload is

12    unprecedented. See "Chiefs of federal courts plead with Congress to fill vacancies," Los Angeles

13    Daily Journal at 4 (October 31, 2019). Accordingly, although given little weight, this factor favors

14    transfer.

15        C.      Summary.

16        Each factor is either neutral or favors transfer. The court will therefore grant JadooTV's

17    motion to transfer.

18                         **<u>CONCLUSION</u>**

19        Based on the foregoing, IT IS ORDERED THAT:

20        1. Defendant Shah's Motion to Dismiss **(Document No. 74)** is **granted in part**. The action

21    against defendant Shah is **dismissed without prejudice**.

22        2. Defendant Shah's Motion to Stay Case Pending Resolution of Shah's Motion to Dismiss

23    **(Document No. 124)** is **denied as moot**.

24        3. Defendant JadooTV and Sohail's Motion to Transfer **(Document No. 139)** is **granted**.

25    The Clerk shall transfer this case forthwith to the United States District Court for the Northern

26    District of California. See 28 U.S.C. § 1404(a).

27    Dated this 16th day of March, 2020.            _____/s/_____

                                              Fernando M. Olguin

28                                    United States District Judge